## BROWN v. MUSGRAVE. (No. 1613.)

(Court of Civil Appeals of Texas. Amarillo. May 26, 1920.)

**1. Estoppel ⬤�longdash63 — Assertion of one ground for refusing to carry out broker's contract of sale does not preclude reliance on another.**

Where a landowner who had listed his property with a broker for sale declined to carry out broker's contract for sale made after discovery of oil on adjoining property, the fact that landowner assigned, as one reason for refusing to carry out the contract, that another broker had previously contracted to sell the premises and that he had procured a release, will not estop him from defending a suit for specific performance on the ground that the purchaser colluded to defraud him, and judgment for the landowner will not be reversed on the ground that, having stated in a deposition that the prior sale was one ground for refusing to carry out the agreement, the landowner cannot rely on others.

**2. Trial ⬤�longdash357—Answers to special question held responsive.**

In an action for specific performance of a contract to convey land, executed by a broker with whom the property was listed for sale, the jury's answer to the question as to whether the owner listed the property that the owner did list land for sale, subject to his approval,

*held* responsive to the issue; the jury being admonished to answer as the facts might be.

**3. Specific performance ⬤�longdash121(8)—Evidence held to show that land had increased in value when broker contracted to sell.**

In a suit for specific performance of a contract to convey land, made by a broker with whom the land was listed for sale, defended on ground of agent's collusion, evidence *held* to warrant findings that at the time the broker executed the contract the land had greatly increased in value, because oil had been discovered on adjacent property, and that the broker knew of the increase.

**4. Specific performance ⬤�longdash121(8) — Finding that owner did not know of producing well on adjacent property warranted.**

In a suit for specific performance of a contract to convey land, made by broker with whom land was listed for sale, finding that the owner did not know there was a large producing well on adjacent land warranted.

**5. Specific performance ⬤�longdash123—Special finding not open to attack as inconsistent with another finding.**

In a suit for specific performance of a contract to convey land which had greatly enhanced in value because of the discovery of oil on adjacent property, the jury's finding that the vendor did not know there was a producing well on adjacent land *held* not open to attack, because it was also found he knew there was a derrick, etc., on the adjacent property.

**6. Specific performance ⬤�longdash121(8)—Evidence held to warrant finding that purchaser and broker colluded to defraud owner.**

In a suit for specific performance of a contract to convey land, entered into by the vendor's broker, evidence *held* to warrant finding that the broker and purchaser colluded to defraud the vendor, who was ignorant, when the contract was made, that oil had been struck on adjacent property.

**7. Brokers ⬤⟻longdash19—Broker must disclose to his principal all facts relating to the value of principal's property.**

It is the duty of a real estate broker to disclose to his principal the facts as to the value of the principal's property, and it is a breach of duty for broker to conceal from principal fact that oil had been struck on adjacent premises, which would greatly increase the value of the principal's property.

**8. Specific performance ⬤⟻longdash53—Purchaser cannot take advantage of real estate broker's fraud and have specific performance.**

Purchaser cannot take advantage of broker's fraud on his principal and secure specific performance of a contract to convey land made by the broker.

**9. Specific performance ⬤⟻longdash53—Contract secured by sharp practices will not be enforced.**

Specific performance of a contract to convey land secured by sharp practices or trickery will not be granted.

---

⬤⟻For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by W. J. Brown against G. W. Musgrave. From judgment for defendant, plaintiff appeals. Affirmed.

W. B. Chauncey, of Wichita Falls, and Miller & Miller, of Ft. Worth, for appellant.

Martin, Bullington, Boone & Humphrey and Martin & Oneal, all of Wichita Falls, for appellee.

HUFF, C. J. The appellant, Brown, sued Musgrave to specifically perform a contract to convey 13½ acres of land, situated in Wichita county, near Burkburnett, and close to land on which the Fowler well No. 1 was brought in. It is alleged, substantially, that Musgrave listed the land with J. S. Nichols, a member of the firm of Jackson & Nichols, being in a general real estate and brokerage business in the city of Wichita Falls; that Nichols was, and the partnership were, authorized to sell the land at and for the sum and price of $3,000 for the whole of the land or for $2,000 for 8½ acres thereof; that it was implied thereby if the whole of the land should be sold $3,000 should be paid by the defendant upon his execution and tender of a proper warranty deed conveying the land to the purchaser, and thereby Nichols became and was by the defendant legally authorized to enter into a binding contract of sale of the land in the name of appellee; that on the 25th day of July, 1918, Nichols, so authorized, negotiated a sale of it to the appellant at and for the sum and price of $3,000; that the appellee, through his agent, Nichols, entered into a written contract with appellant for the sale of the land, by the terms of which appellee agreed to sell and convey to appellant, by good and sufficient warranty deed, the land, and to furnish a complete abstract of title to the land within a reasonable time, not later than 20 days from the date of the contract, July 25, 1918. The appellant agreed to report in writing his objections to the defects in the title, if any, within —— days thereafter, which means a reasonable time from the furnishing of the abstract, and it was provided appellee should have a reasonable time to cure the defects and objections, and if not urged within the time should be deemed waived. Appellant bound himself to pay $3,000 cash, which was to be paid and the papers delivered at the office of the First National Bank of Wichita Falls, Tex.; that the contract should be consummated and all things done and performed on the part of each party on or before the 15th day of August, 1918; that to insure the faithful performance of the contract appellant deposited with said bank the sum of $500, with the understanding that, if the title of said land should prove to be good and appellant complied with his part of the contract, the money should be applied as part of the cash payment for the land, but if appellant should fail or refuse to comply with his part of the agreement, if the title to the land proved good, the sum paid to the bank should be forfeited to defendant as liquidated damages; that the contract was made upon condition that the title to the land should be good and marketable, and in case there was an incurable defect the contract was to be null and void and the money deposited returned to appellant and the whole agreement canceled. It is alleged the appellant offered to comply and that he was ready, willing, and able to comply with his contract; that the appellee failed and refused to comply therewith. It is alleged the title is good and appellee is able to make a good title. The value of the land is alleged to be $50,000. The prayer is for specific performance and, in case the land or any portion could not be conveyed, then for damages.

The appellee alleged that the broker had no authority, either verbal or in writing, to execute the contract declared on in the name of the appellee; that the extent of his authority was to exercise the usual and customary services of the broker, which was to find a purchaser and submit the proposition of the purchaser to the appellee. It is also urged, in effect, that between the listing of the land with the agent and the purported contract, an oil well, known as the Fowler well No. 1, was brought in, which proved to be a large producer, and which immediately advanced the market value of appellee's land, which was adjoining the land on which the Fowler well was situated; that Nichols, the agent, knew this fact, but did not report the changed condition to appellee, who was then in Oklahoma, but, on the contrary, Nichols acted as if he were the agent of the appellant; that appellant knew of such well, but, colluding with the agent, secured the contract, and with intent to defraud appellee made the contract declared upon, setting out in detail some of the facts or badges of fraud on the part of appellant and the agent. By supplemental petition it is alleged that the reason given for refusing to keep and perform the contract was that another agent, F. M. Tollett, had sold the land to another purchaser prior to the time Nichols sold the same to appellant; thereby appellee is estopped to set up any other or further defense.

The findings of the jury in effect established that appellee listed the land with Nichols to sell subject to the appellee's approval; that at the time of making the contract Nichols knew the Fowler well was an oil well; that there was a material advance above $3,000, at which the land was listed, in the market value of the land from the price it was listed to the time the contract sued upon was made, and that Nichols knew of such advance when the contract was made;

that a man of ordinary prudence, with land so listed with him as agent, would have notified his principal before making such contract; that appellee had no knowledge or information about the Fowler well on the morning he left Texas; that this information was such that it would not put him upon inquiry as to the condition of the well at that time; that when appellee paid $150 commission to Nichols he then knew that Nichols had executed the contract with appellant; that the land was of a greater market value on July 25, 1918, than $3,000; that on July 22, 1918, the land was not of the value of $3,000 for any other purpose than its value as prospective oil lands; that it was listed and its value placed by appellee at the time of listing on account of its being prospective oil land; that appellee's reason for not carrying out the contract was because there was an advance in the land and a prospective advance; that appellant and Nichols colluded together and with each other in the making of the contract to bind the appellee on a contract of sale and at a less price than the appellee could have sold it for at the time.

[1] The first assignment asserts that there was error in refusing a peremptory instruction for appellant for the reason that the testimony of appellee and Nichols showed that on January 22, 1918, appellee listed the land with Nichols for sale at $3,000, which was sufficient authority to the agent to enter into a contract at that price, and without controversy the evidence shows the agent executed the written contract sued upon; that it was breached without cause, which entitled appellants to specific performance. The propositions under this assignment may properly be treated, in so far as necessary to dispose of the case, under other assignments, except the third proposition, which is to the effect when a party gives a reason for his conduct as to anything involved in controversy he cannot, after litigation begun, change and put his conduct upon another ground. The appellee assails this proposition as not being relevant to the assignment or included therein, and asserts that the trial court was not put upon notice by motion for new trial that the appellant was relying upon the estoppel for an instructed verdict. It is very doubtful whether the assignment will admit the consideration of the proposition. However, we think the testimony is not conclusive that appellee asserted at the time he refused to carry out the contract, as his only ground therefor, that the land was sold by another agent. The appellant quotes appellee as testifying:

"My excuse for not desiring to close up this deal, Mr. Tollett sold it first; that is, he found a purchaser for it and I paid Tollett $80 and he released it back to me. Both of them, Tollett, Mr. Lipscomb, and I, believed that I had a right to buy my own land back."

This excerpt is taken from the ex parte deposition of the appellee, given November 23, 1918. Suit was then pending and was filed August 9, 1918. The breach was alleged to have occurred July 29, 1918. In this deposition the appellee was asked if it was not a fact that his only reason for refusing to make a deed was that oil was struck on land near his tract and he answered: "I guess so. Tollett sold it first and he released me." He also answered if no oil had been struck he would have sold the land for $3,000, but that if oil had not been struck he could not have sold it to appellant; that he had offered it to appellant some time in May and he would not buy it at any price. Nichols testified that on July 29, the first time appellant visited him after the contract, he stated if an oil well had not come in that he would have accepted Nichols' proposition. The facts generally show that appellee declined to make the deed because the fact of an oil well having been brought in was concealed from him by appellant and the agent until after the contract. The assertions of the bringing in of the oil well and that another agent had purported to convey the land were not so inconsistent as to preclude both as grounds for refusing to convey the land, or to estop the appellee to rely upon the fraud and deceit in making the sale. The appellant could not have been injured by the assertion that the two reasons existed and were asserted as reasons for not completing the sale. It is not shown that appellant would have acted differently or could have remedied the complaint made as to deceit, and the breach of trust reposed in the agent. Barnett v. Kemp, 258 Mo. 139, 167 S. W. 551, 52 L. R. A. (N. S.) 1185; Hutchings v. Binford, 206 S. W. 557; Ault v. Dustin, 100 Tenn. 366, 45 S. W. 984.

[2] The second and third assignments are to the effect that the answer to the first special issue is not responsive and fails to answer directly the special issue as the issue was submitted. The proposition under these two assignments is that a verdict not responsive to an issue will not support a judgment. The issue submitted is:

"Did, or not, the defendant, G. W. Musgrave, list the land in controversy with J. S. Nichols for sale, or did he list it with Nichols for the purpose of having Nichols find a purchaser? Answer as you find the facts to be."

The jury answered:

"He, Musgrave, listed it for sale, subject to his approval."

The assignment is, not that the pleadings and evidence do not support the finding, but that the finding of the jury is not responsive to the issue. The appellant, by his statement, seems to contend the pleadings and evidence are not sufficient. The pleadings presented the issue submitted, and there is some

evidence by the appellee that he did not authorize the execution of the contract as made, and that the appellee had sold land in that country by agents and they always asked him about the land before the contract was put up; and he also testified that he told Nichols as quick as he got a buyer to let him know. It also seems that the agent wired to appellee he had made the sale, and that the appellee wired in reply to hold the trade open, inferably until he could get there. We have not tried to determine definitely whether the evidence was sufficient to support the answer of the jury to the issue. The question upon which we are called to determine is, was the answer responsive to the issue? The first part of the issue is, Did, or not, the appellee list the land with the agent for sale? And the jury were admonished by the court to answer as they found the facts to be. We are inclined to think the answer is responsive to this issue under the admonition; that is, appellee listed it for sale, subject to his approval. If they found the fact to be that the authority to sell was subject to approval, they could not comply with the request of the court to answer as they found the facts to be by leaving off the latter part of their answer. They evidently understood they should give the right to make the sale as the facts showed that authority to be, and that they were justified in attaching the limitation to the power to sell. However, this would not prevent the rendition of a judgment if the other issues established fraud and collusion.

[3] The fourth, fifth, ninth, and tenth assignments assert that the findings of the jury in answer to issues Nos. 3 and 10, both of which were answered in the affirmative, are without evidence to support them. No. 3 is:

"Was there, or not, a material advance above $3,000 at which the land was listed in the market value of the land in controversy from the time same was listed with J. S. Nichols and the time the contract sued upon was made?"

No. 10 is:

"Was, or not, the land in controversy of greater market value than $3,000 on July 25, at the time of the execution of the contract in controversy?"

These assignments also assail the finding that Nichols knew at the time of the execution of the contract that the market value of the land was greater than $3,000. It is asserted that there is no evidence to support such findings. We are inclined to think there is. The evidence shows that the land was listed about July 22, 1918, and between that date and July 25, 1918, the Fowler well came in as a large producer. One witness testified before July 24 leases out there had practically no value; that on July 24 leases between the Musgrave land and the Fowler land were selling at $1,000 an acre. An-

other witness, who appears to have been a dealer in oil lands, testified:

"If July is the proper date the royalty value would be to the lease value as two is to three. That is the basis upon which oil men figure these values. The surface of the land, if there is production on it, would not be worth anything at all."

He further testified:

"Leases out there went up in value, commencing on the morning of the 24th, and they quadrupled in value before noon and keep going—everybody was crazy as they are now."

At the time of leasing the land and at the time of the contract the appellee had leased the land for one-eighth royalty, and, as we understand, the lease was then in effect. The facts, we think, warranted the jury in finding that Nichols knew, or should have known, of the advance in the price of the land when he contracted to sell to appellant. His office was in the very center of oil dealers and brokers in the city of Wichita, and the appellant admits that Nichols said something about the oil well and the excitement around the well before the contract was signed. The Wichita daily papers July 24 announced a big oil well on the Fowler farm. Nichols testified he did not think that he was under obligations to notify appellee of any increase of value by reason of the discovery of oil. There are several circumstances pointing to Nichols' knowledge of the condition of the well and of the increased value of the land. These assignments will be overruled.

[4, 5] The seventh and eighth assignments assail the findings of the jury to the effect that appellee did not know the Fowler well was producing before he left Texas for Oklahoma on the 23d of July. The facts are sufficient to support the verdict. Certain acts and the appellee's knowledge that there was a derrick on the Fowler land and that he had passed near it are relied upon by appellee as rebutting the finding of the jury. We think these matters only went to the weight of the appellee's testimony, all of which were for the jury. The jury's findings are criticized for having found that appellee had no "knowledge or information about the Fowler well." It is asserted that appellee admitted he knew the well was being drilled on the land. The jury evidently understood the issue as an inquiry if appellee knew the well was then an oil well. The next issue answered by the jury shows that to have been their understanding; that is, if his knowledge and information were such as to put him upon inquiry as to the "condition of the well." It would be technical in the extreme to hold the jury intended to find that appellee did not know of the derrick, or that there was being put down a well on the Fowler

land. It is manifest they understood the issue to mean an oil well—a producer.

[6-9] The eleventh assignment assails the finding of the jury that appellant and Nichols colluded together and with each other in the making of a contract to bind the appellee on a contract to sell the land at a less price than the appellee could have sold it for at the time. The facts in this case make it certain that appellant knew the well was a large producer when he made the contract. Before that time appellee had tried to sell the land to appellant, who would not consider the proposition. On July 24 appellant sent a telegram to the appellee that he had sold his place and wanted to buy the land for a home. The evidence is sufficient to show it was not valuable as a home with parties drilling for oil. The jury, we think, had ample evidence to find that this telegram was sent after he had talked to Nichols. He finally admitted that it looked like he did not want appellee to know that he was buying the land because of the oil excitement. We think the evidence amply warranted the jury in finding that Nichols knew appellant was purchasing because of the oil discovery and that he was assisting him in getting the land; that there were several parties, in addition to appellant, wanting the land at that time; and that as many as four or five wired appellee on the 25th of July. Nichols never notified the appellee that there was a discovery of oil in the well, and we think his testimony indicates that he knew that appellant had wired to the appellee as above stated; at least that he instructed him to wire for a price. On the 25th day of July the contract was drawn, signed, and placed in the bank as an escrow. The appellee wired to Nichols to hold the trade open, evidently in answer to Nichols' wire that he had sold. There is some evidence or circumstances, taken together with the uncertain manner of Nichols and appellant in testifying, which would justify the jury in believing that this wire from appellee was received by Nichols before Nichols went to the bank and took out the contract and placed it of record. This land had been leased by appellee for oil and gas, but Nichols said he knew nothing of this. In order to protect appellant Nichols indorsed on the margin of the contract: "It is agreed that this land is not leased for oil and gas." Nichols and appellant somewhat crossed each other as to when this indorse-

ment was made. Nichols thinks, or seems to say, it was before the contract was placed in the bank; appellant says it was afterwards, when the contract was taken out to record. Nichols and appellant were friends of several years' standing, and Nichols says in effect he did not think it to be his duty to report the condition of the well with reference to oil to his principal. We believe it is evident from all the circumstances in this case that Nichols and appellant knew if appellee learned of the condition of the Fowler well he would not sell for $3,000. It seems to have been their purpose to put the contract of record and thereby hold the land, and in this they were acting together. Nichols was giving the appellant ample time and opportunity to secure this land and to fully inform himself, while he permitted his principal to remain in the dark and sought to bind him by an irrevocable contract. He certainly manifested but little solicitude for appellee's interest when land values were quadrupling in that neighborhood in a half day's time. It was Nichols' duty to disclose all the facts affecting the rights of appellee. He did not fulfill the measure of the legal requirements by merely selling at the specific price listed under the circumstances of this case. R. C. L. vol. 4, § 22, p. 272; Pomeroy, Equity Jurisprudence, vol. 3, § 1077. The appellant could not avail himself of the breach of trust on the part of Nichols and knowingly take advantage of the appellee's ignorance and act with the agent in securing the land at a grossly inadequate price, under the circumstances of this case. The facts found by the jury and the legitimate deduction to be made from the record in this case rendered the contract such that a court of equity will not specifically perform. Pomeroy's Equity Jurisprudence, vol. 2, § 905, also section 901; Black on Rescissions and Cancellation, vol. 1, §§ 62 and 63.

"If the plaintiff had obtained it by sharp and unscrupulous practices, by overreaching, by trickery, by taking undue advantage of his position, by nondisclosure of material facts, or by any other unconscientious means, then a specific performance will be refused. It necessarily follows that a less strong case is sufficient to defeat a suit for specific performance than is required to obtain the remedy." Pomeroy's Equity Jurisprudence (4th Ed.) §§ 2207, 2206.

We believe the case should be affirmed.