**EASLEY et al. v. BROOKLINE TRUST CO.**

No. 6205.

Court of Civil Appeals of Texas. Amarillo.

May 5, 1952.

Rehearing Denied June 9, 1952.

Williams, Lee & Kennerly and Irving G. Mulitz, Houston, Leslie Thomas, Crowell, for appellants.

Spafford & Spafford, Donald Gay, Dallas, Weeks & Hankerson, Tyler, for appellee.

MARTIN, Justice.

This appeal involves the title to the oil, gas and minerals in and under 8 sections of land in Foard County, Texas. Two suits in trespass to try title were filed in regard to said minerals and the suits were consolidated and heard by the trial court without a jury as both causes involve the same issues. Brookline Trust. Company, trustee under the will of David Wallace, deceased, filed one of said suits and Hartley Easley filed the other. Judgment was for Brookline Trust Company, appellee .herein, and an appeal was taken by Hartley Easley, Allen Fish, A. G. McAdams, Mary I. McAdams, Alfred A. Swank and Mrs. Ida E. Linke, as appellants.

All the parties agree that Hascal W. Hogel is the common source of title and that he reserved all the oil, gas and minerals in and under the 8 sections of land by his reservation contained in certain recorded deeds to the surface of the 8 sections of land. Such deeds, and the reservations therein made by Hascal W. Hogel, are referred to in the deed at issue in this cause as executed by Hascal W. Hogel to David Wallace on April 17, 1902. However, in this cause we are not confined solely to the agreement of the parties that the above-mentioned mineral reservation by Hogel was of all the .oil, gas and minerals in and under the 8 sections of land as the issue was so determined in Warner v. Patton, Tex.Civ.App., 19 S.W.2d 1111, writ refused. It is thus readily apparent that the original deeds containing the Hogel reservation of minerals under the 8 sections may be safely referred to as established and sufficient reservations of all oil, gas and minerals in and under said lands.

Hascal W. Hogel's deed to David Wallace, dated April 17, 1902, will be quoted as to the essential elements thereof, as such deed is the basis of this suit. Henry B. Mahn was named as one of the grantors in the Hogel deed to Wallace, but was eliminated by judgment. Hascal W. Hogel, acting by and through his agent and attorney in fact, George P. Warner, executed his deed to certain tracts of land naming in said deed David Wallace as the grantee. In this same deed, under the clause granting, selling and conveying such tracts of land, Hogel inserted the following deed provisions, to wit:

"Also all the mining rights together with the rights and privileges to work same and the right of ingress and egress to and from same in and upon or in any wise pertaining to the following described tracts of land, all situated in the County of Foard and State of Texas, and each containing 640 acres, each patented to B. H. Epperson as. assignee of the said T. & N. O. Ry. Company, to wit: (describing the 8 surveys involved here). * * * said' mining rights and privileges having been reserved to us, said Hogel and Mahn, in the deeds heretofore made by us through our said attorney in fact to our various grantees of said lands.

"To have and to hold all and singular the said premises therein conveyed, with the appurtenances and the said mining privileges and rights also herein conveyed unto the said David Wallace and his heirs and assigns in fee simple forever.

"And we do hereby bind ourselves and our heirs and legal representatives. to forever warrant and defend the title to the said premises and appurtenances and mining privileges and rights unto the said David Wallace and his heirs and assigns forever, against any and all persons whomsoever lawfully claiming or to claim the same or any part thereof."

The trial court ruled that the above provisions of the deed from Hascal W. Hogel to David Wallace vested the oil, gas and

minerals in and under said 8 sections of land in appellee's predecessor in title, David Wallace, and granted judgment to appellee for title to the same. Appellants perfected their appeal and bring forward eleven points of error but such points are aptly summarized by appellants as presenting three principal questions. These three questions will be stated and answered in their numerical order in the succeeding paragraphs.

 Appellants' first question is as follows, Did appellee as plaintiff below have title to the oil and gas under the quoted deed as executed and delivered by Hogel to its predecessor in title, David Wallace? Appellants contend that this deed did not convey to Wallace the oil, gas and minerals as originally reserved by Hascal W. Hogel but only gave to Wallace the right to mine for minerals, or as said in appellants' brief, "Hogel chose and intended to pass to Wallace the right to work and take only substances recoverable by mining processes." The trial court did not agree with this conclusion but found that the deed vested the oil, gas and minerals in Wallace.

It does not appear that the trial court would be compelled to go outside the express language of the deed to reach the conclusion that the deed from Hogel to Wallace was not the mere giving of a right to mine for substances recoverable by mining processes but such deed was a conveyance of the oil, gas and minerals. " * * * when the instrument by its terms plainly and clearly discloses the intention of the parties, or is phrased in language not fairly susceptible of more than one interpretation, the intention of the parties is to be ascertained by the court as a matter of law from the language used in the writing and without aid from evidence as to the attending circumstances." Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. ·574, 136 S.W.2d 800, 805, syl. 12, 127 A.L.R. 1217. The parties concede, and Warren v. Patton, supra, expressly holds that the original reservation by Hascal W. Hogel of " 'all the mines, minerals, and mineral rights' " with ancillary rights thereto, as referred to in the Hogel to Wal-

lace deed here in issue, was a reservation of the oil, gas and minerals in and under the 8 sections of land. The Hogel to Wallace deed though using the language "said mining rights and privileges" clarified the conveyance by referring to the prior Hogel oil, gas and mineral reservation in the following language: "Said mining rights and privileges having been reserved to us, said Hogel and Mahn, in the deeds heretofore made by us through our said attorney in fact to our various grantees of said lands." Thus, the oil and gas reservation as expressly ruled on in Warner v. Patton, supra, being referred to in the deed from Hogel to Wallace will accordingly be read into Wallace's deed. " * * * all instruments in a chain of title when referred to in a deed will be read into it". Scheller v. Groesbeck, Tex.Com.App., 231 S.W. 1092, 1093, syl. 4. Other pertinent rules as to construction of a deed will be observed in this citation and are referred to. W. T. Carter & Bro. v. Davis, Tex.Civ.App., 88 S.W.2d 596, syl. 4–5; Connor v. Brown, Tex.Civ.App., 226 S.W.2d 229.

In addition to the fact that the prior established oil, gas and mineral reservation must be read into the deed here in issue under the reference thereto, other elements shown in the deed support the view of the trial court that the Wallace deed was a conveyance of the oil, gas and minerals rather than the giving of a mere right to work for minerals. The deed recites "Also all the mining rights, together with the rights and privileges *to work same.*" You might exercise a right but you do not "work" a right. Further, the deed recites "To have and to hold * * * the said mining privileges and rights *also herein conveyed* unto the said David Wallace and his heirs and assigns *in fee simple forever.*" This is not language conferring upon an individual a mere equitable right to prospect. "And we do hereby bind ourselves and our heirs and legal representatives to forever warrant and defend the *title to* the *said* * * * *mining privileges and rights* unto the said David Wallace and his heirs and assigns forever * * *." (All italics added.) Further, it is not a sound construction of the language of the deed as above out-

lined that grantee reserved all the oil, gas and minerals and only granted a mere right to mine when the deed itself contains no reservation of mines, minerals, mineral rights, oil, gas or minerals of any character.

The language above as taken from the Wallace deed in conjunction with the reference to a prior adjudicated mineral reservation is sufficient basis for the court's judgment that appellee was vested with all the oil, gas and minerals in and under the lands.

Appellants have filed a supplemental reply brief further urging the theory that "an equitable right and not an estate" was granted Wallace. In support of this theory, appellants discuss at length the original Hogel reservation as passed upon in Warner v. Patton, supra, and there held to be a reservation of all oil, gas and minerals in and under the 8 sections of land. Therefore, this reservation will be quoted in full as it is the basis of appellants' supplemental reply brief urging that a mere equitable right was conferred on Wallace and that he had only the right to select 50 acres for mining, in that the Hogel reservation contained a stipulation for use of 50 acres of the surface estate and that such 50 acre stipulation was incorporated into Wallace's deed by the reference therein to the original Hogel reservation. Incidentally, appellants' admission that the 50 acre clause in the Hogel reservation as ruled on in Warner v. Patton, supra, is incorporated in the Wallace deed by reference thereto constitutes a clear-cut admission that the original Hogel reservation was incorporated in the Wallace deed by reference thereto, as hereinabove ruled, and this gives an affirmative answer to appellants' question one as above shown.

The original reservation of minerals by Hascal W. Hogel as made in his various deeds to 8 sections of land is as follows:

"Save and except that we do not hereby in anywise transfer or convey but do hereby expressly reserve and except to our own use and benefit and that of our heirs and assigns forever, all the mines, mineral and mineral rights whatsoever that may be upon, within or under the said tract of land or any part thereof, as well as the right to work any mine or mines upon said land therefor, together with the full right of free ingress and egress upon and from said land for the purpose of mining for such minerals, working such mines and carrying the products thereof. It being also expressly hereby understood that we are to have the use of such part of the surface of said land as may be or become necessary for such mining operations, not to exceed fifty (50) acres in surface area of said tract, but that in the event such mining operations shall cause an encroachment upon more than fifty (50) acres the purchaser or his heirs or assigns shall be paid therefor Two Thousand ($2000.00) Dollars par value of the capital stock of the company which shall be organized for the purpose of extracting such minerals, said stock to be paid up and non-assessable."

It is pertinent to again observe that the above reservation is the one referred to in the Hogel deed to Wallace here in issue and is likewise the same reservation ruled on by the court in Warner v. Patton, supra. It is not to be assumed that in holding the above reservation to be a reservation of all oil, gas and minerals under the 8 sections the trial court, the Court of Civil Appeals and the Supreme Court ruled on only two or three words in such reservation and left unconsidered and unresolved the balance of the language of such reservation.

A reference to the reservation clearly shows that the clause as to use of 50 acres of the surface estate is wholly ancillary to and a part of the mineral reservation and was included in such reservation by the grantor in the deed that he might be certain that the surface estate would be subservient to his operations for the oil, gas and minerals. It is further clearly expressed in the reservation that the grantor was to have the full use of 50 acres of the surface without any payment and that by a payment of $2,000 in stock grantor could use the entire surface in prospecting and mining for the oil, gas and minerals.

The Hogel reservation cannot rightfully be broken into sections and interpreted by reading only two or three words thereof, but must be ruled on in its entirety. Without being presumptuous, since the Supreme Court has already ruled on the above reservation, it is here ruled that the above reservation as recited in full and as read into the deed from Hogel to Wallace here in issue, was a reservation of the oil, gas and minerals under the 8 sections of land and was not merely the granting of an equitable right to pick out a certain 50 acres of land on which to prospect for minerals which right was lost by nonuse.

■ The discussion hereinabove should be adequate to clarify all of appellants' points of error under question one, but an examination into the intent of Hogel and Wallace, if same be required, also leads to the conclusion that the judgment of the trial court was sound under the following additional elements as to intent of the parties: (1) Hogel made no reservation of any of the oil, gas and minerals in his deed to Wallace. (2) It does not appear to be sound logic that Hogel intended to reserve all the minerals when at the very time of the conveyance by Hogel to Wallace a corporation was planned to exploit the minerals, the Texas Copper Company, of which Hogel was to be president. (3) If the parties only meant to convey a mining right then they must have relied solely on the proposition that the grant of a right to drill impliedly carried with it title to the oil, gas and minerals as found, as no expression is found in any instrument as to the right, title or interest of the respective parties in and to the minerals if found. (4) The right of ingress and egress as given in the deed to Wallace does not comport with an "equitable right" —it is easily conceived as to the right of ingress and egress to oil, gas and minerals but not as to ingress and egress to a mere "equitable right." (5) Appellants' predecessor in title, George P. Warner, filed two disclaimers of any interest in Sections 95 and 27, two of the sections deeded to Wallace, and Warner further as to Section 95 stated that an oil and gas lease made by grantors purporting to cover said land was executed by inadvertence and mistake. It must be recalled that this is the same George P. Warner who as attorney in fact for Hascal W. Hogel and Henry B. Mahn executed the deed to David Wallace of the mining rights and said deed containing the reference to the minerals reserved to Hogel and Mahn, "in the deeds heretofore made by us through our said attorney in fact." This George P. Warner is the same attorney in fact referred to and who executed the deed containing the original Hogel reservation of all the oil, gas and minerals as ruled on in Warner v. Patton, supra. Thus George P. Warner, irrespective of any question of his attorneys' right to disclaim title, was the one person most calculated to know the intent of the parties at the time of the execution of all the deeds in issue herein. He knew the contents of the reservation in the original Hogel deed when he referred back to the same and incorporated it into the deed to Wallace. Under the facts in the record as to the intent of the parties, the trial court could have correctly found for the appellee.

The appellants' first question hereinabove stated must be answered "Yes, appellee did have title to all the oil, gas and minerals under the 1902 deed to its predecessor in title, David Wallace."

■ Appellants' second question is as follows, Did failure of appellee and its predecessors to exercise their rights and privileges to work the mines over a long period of years result in loss of such rights and privileges? In the light of the ruling hereinabove made, the correct answer to appellants' second question is that any failure of appellee and its predecessors to work, mine or develop the oil, gas and minerals would not result in the loss of the same. Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Texas Digest, Vol. 28, Mines and Minerals, ■

■ Appellants' third question is as follows, If an estate in any minerals passed to Wallace by the 1902 deed, did the appellants become the beneficial owners of one-half of the same by virtue of the conveyance from Wallace's estate to the law-

yer then already employed by appellants' predecessors? This question is based on the fact that the "minerals passed to Wallace by the 1902 deed." The transaction with the attorney was by the predecessors in title of appellants and appellee, but the parties shall be designated hereinafter as appellants and appellee.

Omitting some of the details as to consideration and setting forth the essential elements raised by appellants' third question, it is found to embody the following proposition: On January 9, 1926, appellants employed attorney James B. Watson to represent them to secure title to the minerals under the 8 sections in Foard County, agreeing to give him one-fourth of the recovery. On November 14, 1928, appellee likewise employed attorney James B. Watson to represent him as to title to the same minerals and agreed to give him one-half of the proceeds. Upon it being decided some 20 years later that superior title to the minerals was in appellee, appellants assert that since Watson was their attorney first that upon his being employed by appellee, such attorney held title in trust for appellants as to one-half appellee's minerals as agreed to be paid by appellee to Watson as a fee. No conveyance of such asserted one-half of the minerals from Watson to appellants is shown or is claimed. It is not alleged, nor is there any proof in the record, that appellee acted in bad faith in employing attorney Watson or that there was collusion between Watson and appellee to deprive appellants of any mineral estate. Nor is there any assertion of fraud on the part of either appellee or attorney Watson. The only fault asserted is that appellee hired attorney Watson, unless it is the further fact that appellee hired said attorney last.

In support of appellants' above proposition they cite Home Investment Co. v. Strange, 109 Tex. 342, 195 S.W. 849, 850, and like authorities, and quote from Home Investment Co. v. Strange in their brief. This case is not applicable to the facts in the cause here at issue or are like cases so cited by appellants applicable here. First, it is noted that in the Home Investment Company case Strange, who employ-

ed the attorney Moroney, held title to the lots and sought to clear such title—here appellants' theory is based on the proposition that the "minerals passed to Wallace" and that Wallace was the owner of title to said minerals under the 1902 deed. Second, Moroney, the attorney in the Home Investment Company case, after being employed to clear Strange's title, acquired such title for himself and placed the same in the Home Investment Company of which he was president. In this connection it is also noted "Moroney's *fraud* in placing the title in fact in the name of the Home Investment Company." (Italics added.) Third, it is noted that in the Home Investment Company case, one Kendall and wife had bought lots 17 and 18 and the court ruled that they were entitled to their consideration before title could be vested in Strange. Finally, since Kendall and wife are the only parties approaching appellee's position in this cause, a search of the Home Investment Company, supra, does not reveal that Kendall and wife ever hired attorney Moroney or ever agreed to give him as a fee any part of lots 17 and 18. This fee would be the interest, under appellants' theory, which would have been held in trust by Moroney for Strange.

Home Investment Co. v. Strange, supra, does not support appellants' theory here. On analysis, appellants' theory would appear to fail under the appellants' initial admission that "the minerals passed to Wallace by the 1902 deed", for if such minerals passed to Wallace by the 1902 deed it is not believed that any case can be cited whereby he would lose title to such minerals by the simple act of employing an attorney who happened to be employed by appellants to seek title to the same minerals.

However, an application of the law surrounding appellants' primary principle that "a man cannot serve two masters" defeats appellants' claim of title to the one-half minerals asserted as being held in trust for them by their attorney. First, if the appellants' and appellee's respective interests were not adverse, that is the end of the issue as each party could employ the same attorney without any question as to the is-

sue. Second, let us assume that such respective claims of appellants and appellee were in fact adverse and that appellants first employed attorney Watson to represent them in clearing their title. The next step is the employment by appellee of this same attorney to represent him with agreement to pay such attorney a *fee* of one-half appellee's minerals as then owned.

Under the above facts, appellants' theory fails upon application of the settled authorities. Since attorney Watson was already employed by appellants to represent them he was incapacitated from thereafter representing appellee as to an adverse interest in the same subject matter and collecting a *fee* therefor. "The office of attorney incapacitates him from representing different interests which are adverse in the sense that they are hostile, antagonistic, or in conflict with each other, and this *disqualification* precludes him from undertaking employment whereby his own interests are brought into conflict with those of his client." (Above italics added.) 7 C.J.S., Attorney and Client, § 47, p. 823; W. C. Turnbow Petroleum Corporation v. Fulton, Tex.Civ.App., 199 S.W.2d 263, syl. 1; Barreda Corporation v. Ballenger, Tex.Civ. App., 116 S.W.2d 442, syl. 8; Traders & General Ins. Co. v. Keith, Tex.Civ.App., 107 S.W.2d 710, Sec. 1. Further, "Since counsel fees are earned only by fidelity to, and activity for, a client and his interests, and since, as has been shown supra § 47, an attorney cannot serve conflicting interests, *he can claim pay* for his services *from only one side * * *.*" 7 C.J.S., Attorney and Client, § 167b, p. 1024. "In so far as their interests were conflicting *he could not properly be paid a fee by both* even though the representation be with the consent of both parties." Norman v. Wilson, Tex.Civ. App., 41 S.W.2d 331, 333, syl. 7–8, error refused; Bryant v. Lewis, Tex.Civ.App., 27 S.W.2d 604.

Since the appellants' attorney Watson was wholly disqualified from representing appellee and under the law could collect no fee from appellee, title did not vest in said attorney to the one-half interest purportedly agreed to be paid him as a fee by ap-

pellee. Therefore, the answer to appellants' third question is "No."

The above principles dispose of appellants' third question and a lengthy discussion will not be entered into as to the purported conveyance to Watson of appellee's one-half the minerals. The agreement under which appellants claim attorney Watson was vested with title does not go that far as such agreement states Watson "shall be entitled to receive one-half of all the proceeds received from the sale or other disposition of said mineral estates or the interests of the parties of the first part therein and including one-half of all sums that may be received by the parties of the first part therefrom in the nature of rents, royalties or other income in any way derived from said interest." Browne v. King, 111 Tex. 330, 235 S.W. 522. Further, it is not disclosed that Watson ever made any claim that such fee as set forth was earned or that any proceeds have ever been received from the sale or disposition of said mineral estate. It is likewise obvious that only at this late date is the service of clearing title as to said mineral estate being performed and Watson is not attorney for the party.

Appellants' third question, including points thereunder, is placed in evidence only by a certified copy of an ex parte affidavit of one Charles C. Bucknam. This affidavit is subject to the objections stated in this court that there was no proof of execution or delivery of the instrument, there was no acknowledgment of the same, and that such instrument was not properly subject to recordation, the same is hearsay and the appellants were not afforded an opportunity to cross-examine Bucknam and that the rules as to introduction in evidence of certified copies were not complied with. However, appellants' contention is correct that in the trial court appellee made no objection to such affidavit other than "incompetent, irrelevant or immaterial," which is tantamount to no objection at all. The objections above mentioned come too late in the appellate court.

Although appellants' and appellee's predecessors in title hired attorney Watson in

990

1926 and 1928 respectively, and such attorney even represented the parties in Warner v. Patton, supra, it does not appear that any party was disturbed by Watson's employment until the year 1948 when this suit was filed. It appears that the parties either found no fault with such employment or waived any right to complain. 7 C.J.S., Attorney and Client, § 126(2), p. 962.

The costs were properly adjudged against appellants by the court in awarding judgment to appellee. Appellants' three questions hereinabove embody all of appellants' points of error and the rulings hereinabove constitute a ruling on all points of error. Accordingly, appellants' eleven points of error are overruled and the judgment of the trial court is affirmed.