John G. PAXTON, Appellant,

v.

Emory M. SPENCER et ux., Appellees.

No. 794.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 21, 1973.

**640**

Thomas M. Andrews, Ellis & Andrews, Aransas Pass, for appellant.

Allen Wood, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for specific performance of a contract to convey real estate. John G. Paxton, the buyer, hereinafter called "Paxton", sued Emory M. Spencer and wife, the sellers, hereinafter called "Spencer", for specific performance of a contract to convey four tracts of land on Copano Bay, in Aransas County, Texas. After a trial to a jury, a take nothing judgment was rendered which denied specific performance. We affirm. Paxton, in his appeal, contends that the trial court erred in overruling his exceptions, in admitting certain testimony over his objections into evidence, in overruling his objections to the charge and in commenting on the evidence.

The contract which is sought to be enforced is in the form of a letter, dated February 24, 1971, written by Paxton, and addressed to Spencer. The introductory paragraph reads, in part, as follows:

"The purpose of this letter is to set forth in writing my understanding of the basic terms of our agreement pertaining to the proposed purchase of certain property owned by you, such property being identified as Parcels # 1, # 2, # 3 and # 4 on the plot attached hereto. . . ."

Paragraph 7 contains the following statement:

"It is recognized by Seller that Buyer intends to use the property for a mobile home subdivision. . . ."

Spencer, after demand for the deed made subsequent to April 1, 1971, refused to execute and deliver the same. Paxton then brought suit to enforce specific performance of the contract by requiring Spencer to convey to him by "General Warranty Deed, the title to all that certain land and premises in Aransas County, Texas, being hereinafter referred to as Parcels No. 1, No. 2, No. 3 and No. 4", or in the alternative, that he be awarded damages in the amount of $33,257.46.

Spencer denied generally the allegations contained in Paxton's petition, and pleaded, among other defenses, that the execution of the contract was induced by fraud on the part of Paxton, that the contract is too uncertain to entitle Paxton to specific performance, and that Paxton does not come into court with clean hands and is not entitled to the equitable relief of specific performance.

The jury, in response to the special issues submitted, found in substance: 1) that prior to the execution of the contract, Paxton stated to Spencer that the mobile home subdivision would be a first-class subdivision, that such statement was false, that at the time Paxton made the statement he did not intend to put on a first-class subdivision, that Spencer relied upon Paxton's statement, and that Spencer would not have signed the contract if the statement had not been made; 2) that prior to the execution of the contract, Paxton told Spencer that he had "much experience" in

putting on superior-type subdivisions, that such statement was false, and that Spencer relied on the statement; 3) that prior to the execution of the contract, Paxton told Spencer that he had ample finances to put on such a subdivision, that such statement was false, that Spencer relied on such statement, that Spencer would not have signed the contract had such statement not been made, and that it was apparent at the time Paxton made demand on Spencer for delivery of deed that he did not intend to put on a first-class mobile home subdivision; 4) that Paxton expended $15,000.00 for the "necessary expenses" in developing the mobile home subdivision described in the agreement dated February 24, 1971; and 5) that Paxton was entitled to $3,000.-00 for his time and efforts reasonably spent in developing the subdivision.

■ Plaintiff levelled special exceptions at the allegations contained in paragraphs 2, 4, 5 and 6 of Spencer's answer, for the reason that "the same are not sufficient in law to excuse defendant's nonperformance". They were overruled by the trial court, and Paxton complains of such ruling by points of error Nos. 1, 2, 3 and 4. Rule 90, Texas Rules of Civil Procedure, provides that every defect, omission, or fault in a pleading which is not specifically pointed out by a motion or exception in writing and brought to the attention of the trial judge before the charge to the jury, in a case tried before a jury, shall be deemed to have been waived by the party seeking reversal on such account. Rule 91, T.R.C.P., provides that a special exception shall not only point out the particular pleading excepted to, but "it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to". The exceptions in question do not point out with particularity any reason for the conclusions stated. They do not meet the test imposed by the Rules. Therefore, the trial court properly overruled them. Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983 (1945). Such exceptions are nothing more than general demurrers and violate Rule 90. Huff v. Fidelity Union Life Ins. Co., 158 Tex. 433, 312 S.W.2d 493, 499 (1958). Spencer's allegations that certain representations were made to him by Paxton which were material, false, and known to be false by him, and were made for the purpose of inducing him (Spencer) to execute the contract, and that he relied upon such representations in executing the contract, are authorized by the Business and Commerce Code, in § 27.-01, V.T.C.A. thereof.

■ Paxton further asserts that it was error for the trial court to overrule his special exceptions to paragraphs 7 and 8 of Spencer's answer because, in each instance, "the statements contained therein are conclusions of law". The points are without merit. Spencer pleads, in paragraph 7, that "plaintiff, having made the representations hereinbefore pleaded and having failed to comply with those that are promissory, is estopped to demand specific performance of the contract". An examination of the answer reveals that Spencer pleaded every element of equitable estoppel required to be alleged to support a plea of estoppel in pais. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). Paragraph 8 alleges that the contract "is too ambiguous, vague, incomplete and uncertain to entitle plaintiff to the relief of specific performance". The exceptions do not comply with the requirements of Rules 90 and 91. Moreover, Rule 45(b), T.R.C.P., permits the pleading of a legal conclusion provided the opposite party is not misled thereby. Texas Employers' Insurance Association v. Price, 336 S.W.2d 304 (Tex.Civ.App.—Eastland 1960, n. w. h.); Hankey v. Employer's Casualty Co., 176 S.W.2d 357 (Tex.Civ.App.—Galveston 1943, n. w. h.). In this case, Spencer's pleadings sufficiently informed Paxton of the reasons why the contract was allegedly uncertain. Paxton had the same information as to the provisions of the contract as did Spencer. Paxton pleaded that the con-

tract be enforced. Fair notice of Spencer's defenses was given when the answer in its entirety is considered. Furthermore, Paxton has not demonstrated that he suffered any harm by the court's rulings. (Rule 434, T.R.C.P.) Points of error Nos. 7 and 8 are overruled.

The remedy of specific performance is purely equitable in nature and is governed exclusively by the maxims and principles of equity. Steves v. United Services Automobile Association, 459 S.W.2d 930 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.); Ferguson v. Von Seggern, 434 S.W.2d 380 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Suit for specific performance, being a matter of grace, is not one of absolute right. Johnson v. Karam, 466 S.W.2d 806 (Tex.Civ.App.—El Paso 1971, writ ref'd n. r. e.); Rutherford v. Nichols, 253 S.W.2d 306 (Tex.Civ.App.—Eastland 1952, writ ref'd n. r. e.). In order to be entitled to specific performance of a contract, the person seeking such relief must come into court with clean hands, and "the contract must be equitable, perfectly fair in all its terms and free from any misrepresentations, fraud, mistake or misapprehension". Inman v. Parr, 311 S.W.2d 658, 709 (Tex.Civ.App.—Beaumont 1958, writ ref'd n. r. e.). For a carefully detailed and comprehensive enumeration of well established guidelines relating to the equitable remedy of specific performances, see Nash v. Conatser, 410 S.W.2d 512 (Tex.Civ.App.—Dallas 1966, n. w. h.).

Paxton does not complain of the failure of the judgment to award him the sum of $15,000.00 which the jury found that he paid for necessary expenses incurred in putting on the subdivision, nor does he complain of its failure to award him the $3000.00 to which the jury said he was entitled for his personal time and efforts reasonably spent in developing the subdivision. He does not attack any of the jury findings which are favorable to Spencer by points of error. His basic contention is that the contract sought to be enforced is not a contract to construct a mobile home subdivision, but is nothing more than a contract for the purchase and sale of land. He argues that the introduction in evidence of testimony relating to conversations between him and Spencer which were had prior to the execution of the contract and of Spencer's understanding of the agreement between them violated both the parol evidence rule and the extrinsic evidence rule because such testimony varied the terms of the written contract that was subsequently signed by them. He does not, however, have such a point in his brief. But, he does bring forward points of error complaining specifically of the trial court's actions in allowing the introduction of evidence relating to whether there was a meeting of the minds of the parties, the involvement of Paxton with one Joe B. Novotny, Spencer's interpretation of the contract, litigation in which Paxton was involved, evidence relating to the cost of usual procedures and customary development of resort subdivisions, and of Paxton's financial ability to put in a first-class mobile home subdivision.

No authority is required to sustain the principle that prior negotiations of parties to a written contract, complete in itself and unambiguous, are merged in the writing, in the absence of evidence to show fraud, accident or mistake in their omission from the written contract. In that case, extrinsic evidence, parol or otherwise, will not be received in evidence, if its effect is to vary, add to, or contradict the terms of the written instrument. In particular, the extrinsic evidence rule ordinarily requires the exclusion of parol evidence of prior negotiations, representations, or statements that would add to, vary, or contradict the term of written contracts that are clear on their face. See 23 Tex.Jur.2d, Evidence, § 342, pp. 500–504, and the cases there cited. In the absence of fraud, accident or mistake, the intent of the parties to a written instrument that is clear and unambiguous on its face must ordinarily be ascertained from the instrument alone

without the aid of extrinsic evidence. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800 (1940); Cutrer v. Cutrer, 334 S.W.2d 599 (Tex.Civ.App.—San Antonio 1960, aff'd 162 Tex. 166, 345 S.W.2d 513).

■ However, it is equally well established that extrinsic evidence is admissible when fraud is practiced in inducing a person to enter into a written contract. The extrinsic evidence is admitted not to vary, add to, or contradict the terms of the writing, but to show that the writing itself, from its inception, never became legally effective because of fraud. Business and Commerce Code, § 27.01, V.T.C.A.; King v. Wise, 282 S.W. 570 (Tex.Com.App. 1926); Guisinger v. Hughes, 363 S.W.2d 861 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); Stone v. Williams, 358 S.W.2d 151 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); Anderson v. Wise, 345 S. W.2d 803 (Tex.Civ.App.—Eastland 1961, aff'd 163 Tex. 608, 359 S.W.2d 876); Roy Klossner Co. v. McIntire, 301 S.W.2d 197 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.).

■ Where the defendant, in defending an action brought against him, alleges that he was induced to sign the written contract sued upon by the fraudulent representations of the one seeking to enforce the contract, it will not be conclusively presumed that the written instrument contained the whole agreement of the parties, and extrinsic evidence of representations not disclosed by the instrument is admissible. Avery Co. of Texas v. Harrison Co., 267 S.W. 254 (Tex.Com.App.1924); White, Ward & Erwin v. Hager, 112 Tex. 516, 248 S.W. 319 (Tex.Com.App.1923, opinion adopted). See also Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97 (1942).

■ Fraud may be used as a defense against a suit for specific performance where there has been a failure to perform an oral promise to do something in the future, upon which the defendant relied, and where the promise was made for the purpose of inducing the execution of the contract without any present intention to perform in the future. Urso v. City of Dallas, 221 S.W.2d 869, 871–872 (Tex.Civ.App.—Dallas 1949, writ ref'd); Powell v. Andrews, 220 S.W.2d 718, 720 (Tex.Civ.App.—Texarkana 1949, writ ref'd n. r. e.).

■ The burden is upon the party seeking specific performance to show that he has complied with the rules of equity, e. g., to show that the contract is free from fraud. Riggins v. Trickey, 46 Tex.Civ.App. 569, 102 S.W. 918, 921 (1907, writ ref'd). Where a contract has been induced by fraud, equity will not order specific performance against the defrauded party. Urso v. City of Dallas, supra; W. K. Ewing Co. v. Krueger, 152 S.W.2d 488, 490 (Tex.Civ.App.—San Antonio 1941, ref'd w. o. m.); Inman v. Parr, supra; Tanner v. Imle, 253 S.W. 665 (Tex.Civ.App.—San Antonio 1923, writ dism'd); Brown v. Musgrave, 222 S.W. 606 (Tex.Civ.App.—Amarillo 1920, n. w. h.); 87 A.L.R. 1345; 81 C.J.S. Specific Performance § 89, pp. 606–607; 71 Am.Jur.2d, Specific Performance, § 45–50, pp. 72–77; Restatement of the Law, Contracts, § 367.

■ The record conclusively shows that prior to the execution of the contract, Paxton told Spencer that he had a great deal of experience in putting on top-notch, first-class, superior type subdivisions, that he intended to put in that kind of subdivision on the land covered by the contract, and that he had ample personal finances and unlimited access to funds with which to accomplish the same. Such representations were statements of past existing facts and statements as to future performance. If they were false, then a fraud was committed upon Spencer. Mangum Road Center v. Disclafani, 450 S.W.2d 130, 134 (Tex.Civ.App.—Houston 14th Dist., 1970, writ ref'd n. r. e.). Spencer testified that he believed the statements made by Paxton, relied upon them, and would not have

signed the contract otherwise. The jury found all of the representations made by Paxton to be false.

The cost of putting in a first-class mobile home subdivision on the land in question, according to Spencer's witnesses, ranged from $2,500.00 to $3,000.00 per lot. Paxton expected to subdivide each acre into about ten lots. Parcel # 1 of the land covered by the contract contained about ten acres, and the cost of preparing this tract for the purpose of such a subdivision, according to Spencer's evidence, would have been at least $250,000.00. Paxton's expenses in putting on the subdivision as of date of trial were shown to be approximately $17,000.00.

Paxton, in 1962 or 1963, became connected with Jamaica Corporation, a resort development concern. He was general sales manager and an officer of the corporation. It went into receivership. According to the financial statement of Paxton, dated October 21, 1970, he reportedly owed $76,300.00 to "Banks", but that figure did not include the money which he owed to the Sharpstown State Bank on a note dated October 31, 1969, in the principal amount of $125,000.00, nor did it include a $23,750.00 note to that Bank which was executed on October 21, 1970. Paxton testified at the trial that he had not been sued on either of the notes, but Spencer introduced in evidence certified copies of the petition filed by the Receiver for the Sharpstown State Bank in a civil suit against Paxton on the notes, which suit was filed after the contract herein sued on was executed, but before this case was tried. The answer filed by Paxton in the suit brought against him by the Receiver showed that the $125,000.00 note was secured by 400 shares of capital stock of Tidewater Fishing Publications, Inc. On Paxton's financial statement, the stock was listed as having a value of $147,380.00, but it was not shown therein that it had been pledged as security for the $125,000.00 bank loan. The evidence further showed that Joe B. Novotney, President of the

Sharpstown State Bank, arranged the $125,-000.00 loan on Paxton's agreement to use $50,000.00 of the amount to buy some of Novotney's stock in the Sharpstown State Bank, which Paxton did. At the trial, Paxton admitted that he owed all of the aforesaid sums of money at the time he was negotiating with Spencer concerning the land in question.

When asked if there were different types of mobile home subdivisions, Paxton answered: "Right". He also stated that "no doubt about it", he and Spencer were talking about a first-class subdivision that he was to put in, and that is what he told Spencer before the contract was signed.

◼ The testimony dealing with other civil litigation in which Paxton was involved at the time in question, the cost relating to the usual and customary development of a first-class mobile home subdivision, the conversations between Paxton and Spencer before the contract was signed, the testimony relating to the contacts of Paxton with Novotney, the circumstances surrounding the making of the $125,000.00 loan, and the evidence concerning Paxton's financial ability to develop the land in accordance with his expressed intention and Spencer's understanding are, in each instance, admissible on the issues of fraud raised by Spencer's pleadings. Besides, it was not reversible error to overrule Paxton's objections to the introduction of such evidence on the grounds of "immateriability" to any fact issue in the case. See Clark v. Coulson, 351 S.W.2d 538, 547 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.); Capitol Hotel Co. v. Rittenberry, 41 S.W.2d 697, 705 (Tex.Civ. App.—Amarillo 1931, err. dism. Under the record, this objection was too general. Peerless Oil & Gas Co. v. Teas, 138 Tex. 301, 158 S.W.2d 758 (1942); Harrington v. Aetna Casualty & Surety Co., 489 S.W.2d 171, 178 (Tex.Civ.App.— Waco 1972, writ ref'd n. r. e.); Easley v. Brookline Trust Co., 256 S.W.2d 983, 989 (Tex.Civ.App.—Amarillo 1952, n. w. h.); St. Louis Fire & Marine Ins. Co. v. Silver-

man, 221 S.W.2d 862 (Tex.Civ.App.—Galveston 1949, n. w. h.); 1 McCormick and Ray, Texas Law of Evidence, §§ 24, 25 pp. 22–26. Accordingly, Paxton's points 8, 9, 10, 11, 12 and 14 are overruled.

Paxton also complains, by appropriate points of error, that the trial court erred in overruling his objections to the submission of certain special issues in that: 1) Special Issue No. 1, which inquired into whether Paxton told Spencer that the mobile home subdivision would be a "very superior type of subdivision", and Special Issue No. 6, which asked if the subdivision would be "a first-class subdivision", are synonymous as to meaning, and the submission of the two issues were improper; 2) there was no evidence to support Special Issue No. 11 on the question of whether Paxton had experience in putting in "superior type subdivisions", and that the submission of that issue placed an improper burden on him; 3) that Special Issue No. 10, which asked if Spencer would have signed the contract had the statement by Paxton that the mobile home subdivision would be a "first-class subdivision" not been made to him, is not supported by any evidence, is evidentiary and is not a controlling issue; and 4) that Special Issue No. 17, which inquired whether Spencer would have signed the contract if the statement of Paxton that "he had ample personal finances to put on such a subdivision" not been made to him, is not supported by the evidence, and is merely evidentiary in that it does not present a controlling issue.

■■ There is no reversible error in the submission of any of the aforesaid special issues. Duplication of special issues is not sufficient of itself as a ground for reversal unless the complaining party shows that the duplication influenced the jury to render a verdict different from what it would have rendered except for the duplication. Denton County Electric Co-op., Inc. v. Burkholder, 354 S.W.2d 639 (Tex. Civ.App.—Fort Worth 1962, writ ref'd n. r. e.); Munden v. Chambless, 315 S.W.2d 355 (Tex.Civ.App.—Dallas 1958, writ ref'd

n. r. e.). Paxton does not show that he was harmed or prejudiced by the submission of both Special Issue No. 1 and Special Issue No. 6.

■ It is uncontroverted that Paxton testified in various ways and on several occasions that it was his intention to put in a superior type, first-class, deluxe mobile home subdivision. The evidence is further uncontroverted that he told Spencer he was experienced in putting in superior type subdivisions. The submission of Special Issue No. 11 did not place an improper burden on Paxton.

■ The objections to Special Issue No. 17 are met in the following quotation of key questions asked of Spencer and his answers thereto:

"Q. Now in signing that contract, did you rely upon these representations that Mr. Paxton had made to you?

A. I did.

Q. All right. And would you have signed it otherwise?

A. I would not have signed it otherwise."

Therefore, Special Issue No. 17 and the answer thereto are each fully supported by evidence.

The jury also found, in answer to Special Issue No. 18, that at the time Paxton demanded a deed from Spencer, it was apparent that he (Paxton) did not intend to put in a first-class mobile home subdivision. Paxton did not object to the submission of that issue, nor does he contend on appeal that the issue (and its answer) is not supported by evidence. Paxton's points 16, 17, 19 and 20 are overruled.

■ Paxton also complains that the trial judge, in response to a written inquiry from the jury after it had commenced its deliberations, commented on "the weight of the evidence" when he replied, in writing, as follows: "You may consider all the evidence presented during the trial." The contention is without merit. All of the ev-

idence that is introduced is introduced so that the jury may consider it in arriving at their answers to the issues submitted. Paxton's point 21 is overruled.

We are also of the opinion that the contract in question is too uncertain to authorize a judgment of specific performance of the contract.

The agreement called for the purchase and sale of four tracts of land, therein identified as "Parcels #1, #2, #3, and #4". Paragraph 8 of the instrument provided:

"This transaction shall close April 1, 1971. . . . The closing, if any, for Parcels #2, #3 and #4 shall be at such time or times as Buyers and Seller may agree. . . ."

The contract makes it perfectly clear that the transaction, insofar as Parcel #1 is concerned, will close on April 1, 1971, and that at the time of closing the entire purchase price for that parcel shall be evidenced by a note which shall mature one year from date of closing. The agreement further makes it plain that at the time of closing with respect to Parcel #1, Paxton shall have an option to acquire the remaining parcels on the conditions therein stated, and that the entire purchase price for any optioned parcel so purchased shall also be evidenced by a note for the required amount of money. But, the contract does not set out the time and manner that the note, relating to each of the optioned parcels, is to be paid. Therefore, the language of the contract leaves the matter of the closing date for each of Parcels #2, #3 and #4, as well as the maturity date and manner of payment for each of the notes to be given in payment for the purchase price for each of the optioned parcels, uncertain and indefinite.

A reasonable, not an absolute certainty, in all the material terms, provisions and conditions of a contract is all that is required in order to support a judgment for specific performance. Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454 (1943). However, in the case at bar, the date of closing and the time of payment of the deferred consideration for each of the optioned parcels, which are material terms of the contract, cannot be determined with any degree of reasonable certainty. The uncertainties existing in the agreement between the parties preclude the granting of a judgment for specific performance. Some of the material terms, provisions and conditions of the contract are wanting. Bryant v. Clark, 347 S.W.2d 635 (Tex. Civ.App.—Austin 1961, aff'd 163 Tex. 596, 358 S.W.2d 614); O'Neil v. Powell, 470 S.W.2d 775 (Tex.Civ.App.—Fort Worth 1971, writ ref'd, n. r. e.); 81 C.J.S. Specific Performance § 34 c, p. 494; 71 Am.Jur. 2d, Specific Performance, § 41, pp. 62–64; 52 Tex.Jur.2d, Specific Performance, § 37 pp. 560–562); Restatement of the Law, Contracts, § 370.

We have carefully considered all of the points of error asserted by Paxton, and they are all overruled. In view of the affirmance of this case, it is not necessary that we consider Spencer's cross point that the trial court erred in overruling his motion for an instructed verdict.

The facts found by the jury, and the legitimate deduction to be made from the record in this case, rendered the contract sued upon unenforceable in a court of equity. The trial court properly rendered judgment denying specific performance.

The judgment of the trial court is affirmed.