CLARENCE WISE, Petitioner

V.

M. E. ANDERSON ET AL, Respondents

No. A-8425. Decided July 18, 1962
359 S.W. 2d 876

*Orrin W. Johnson,* Harlingen, for petitioner.

*Kelly, Looney, McLean & Littleton,* Edinburg, for respondents.

ASSOCIATE JUSTICE GREENHILL delivered the opinion of the Court.

Clarence Wise brought this suit against M. E. Anderson and the Anderson Oil and Gas Company of Texas. He alleged that he was fraudulently induced by Anderson to execute an oil and gas lease. Among other things, Wise asserted that Anderson falsely promised him orally that he would begin the drilling of a well on his land within 90 days. His action was for damages under Art. 4004 of Vernon's Civil Statutes of Texas dealing with actionable fraud. In a jury trial, Wise recovered actual and exemplary damages. The judgment was reversed by the Eastland Court of Civil Appeals and judgment was rendered that plaintiff take nothing. It held that Wise's cause of action was barred by the two-year statute of limitations. 345 S.W. 2d 803. We have determined that the correct result was reached by the Court of Civil Appeals and that its judgment should be affirmed. This opinion, therefore, will be confined to the limitations questions.

On October 25, 1954, Wise executed an oil and gas lease to Anderson. It was for a primary term of five years. It provided that it should terminate after one year unless Anderson drilled a well on the land within one year or paid specified delay rentals to a depository bank. The lease further provided that "In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods" of one year.

Wise testified that before the signing of the lease, Anderson promised him a test well would be drilled on Wise's property within 90 days from the execution of the lease: i.e., by January 23, 1955. He also testified that Anderson represented that he had previously secured a lease from the owners of the other half of the minerals under the Wise land, and that he, Anderson, had enough acreage to secure a permit from the Railroad Commission to drill on the Wise property. Wise alleged that his property is in a gas field and that he had been suffering drainage from other wells in the field for several years because there was no well on his property. For these reasons and because a well on his property would have the effect of stopping or minimizing the drainage, Wise alleged that he was induced to execute the lease to Anderson by reliance on Anderson's oral representations which indicated that Anderson had the ability and intention to drill on the Wise land within 90 days after the execution of the lease.

The jury made findings which support these allegations of

Wise. As particularly applicable here it found that Anderson orally promised that he would drill a well within 90 days from the date of the lease; that the promise was made without any intention to perform it; that it was made to induce Wise to execute the lease; that it was a material inducement but for which Wise would not have executed the lease.

It is undisputed that a well was not drilled on the Wise property on January 23, 1955, 90 days after the execution of the lease. Wise was farming this land. During the 90-day period, he observed that no roads were built or other operations performed to indicate that Anderson was about to drill. He admitted in his pleadings that when Anderson did not have a rig on the land within the 90-day period, he "decided at once to inquire into the entire matter".

Wise instituted this suit on July 12, 1957, more than two years from January 23, 1955, by which date Anderson had promised Wise that he would drill a well.

On November 18, 1955, Anderson assigned the Wise lease to the Anderson Oil and Gas Company of Texas. This company was not in existence on the date of the execution of the lease on October 25, 1954, or at the time on which the well was supposed to have been drilled. It was not formed until about a year after the lease was executed. The Anderson Oil and Gas Company of Delaware, according to Anderson's testimony, owned all of the stock in the Anderson Oil and Gas Company of Texas, and Anderson was the principal stockholder of the Delaware company and the president and a director of both companies. On May 16, 1957, Anderson Oil and Gas Company of Texas, over the protest of Wise, assigned the Wise lease to Coastal States Gas Producing Company. The consideration for the assignment was $3,000 and the reservation of an overriding royalty. Wise concedes that Coastal States had no knowledge of the alleged oral fraudulent representations of Anderson.

As has been stated, Wise brought this action against Anderson individually and the Anderson Oil and Gas Company of Texas. We shall consider the claims against the two defendants separately. We consider first the claim against Anderson.

■ The statute of limitations which is applicable to the claim of Wise against Anderson is one which says that a suit shall be commenced within two years after the cause of action accrues "and not afterward". Art. 5526, Vernon's Texas Civil Statutes

Annotated. It is undisputed that this suit was not brought within two years after the expiration of the 90-day period within which Anderson promised to drill. The problems, therefore, are (1) when the two-year statute began to run, and (2) whether Wise established that the two-year limitations period was interrupted or tolled by the absence of Anderson from the State of Texas.

We have concluded that the statute of limitations began to run immediately upon the expiration of the 90-day period. This was the time when Wise knew that a well had not been drilled on his land within 90 days as promised. While fraud will prevent the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence should have been discovered, *Sherman v. Sipper*, 137 Texas 85, 152 S.W. 2d 319 (1941), knowledge that no well had been commenced was "knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud". *Glenn v. Steele*, 141 Texas 565, 61 S.W. 2d 810 (1933). Such knowledge is in law knowledge of the fraud itself. The holding of this Court in *Glenn v. Steele*, is particularly strong when considered in the light of the opinion of the Court of Civil Appeals in that case, 57 S.W. 2d 908.

■ Since Wise did not file this lawsuit until July 12, 1957, more than 2 years and 5 months after he had acquired the knowledge just discussed, the two-year statute of limitations bars his cause of action against Anderson unless the statute was interrupted or tolled for a sufficient period of time. Wise contends that the statute was tolled by virtue of Anderson's absence from the state; that Anderson was absent about six months during the period in question. Art. 5537, V.A.C.S., provides that absence of the defendant from the state "shall not be accounted or taken as a part of time" of the limitations period. Anderson was not a resident of Texas. While it has been held that the above article has no application, as a general rule, to nonresidents, *Simonds v. Stanolind Oil & Gas Co.*, 134 Texas 332, 114 S.W. 2d 226, at 233 (1938), it does apply to nonresidents who were present in the state at the time the cause of action accrued or had its inception and who later leave the state. *Gibson v. Nadel*, 164 F. 2d 970 (5th Cir. 1947).

Neither the absence of Anderson from the state for sufficient time to avoid the running of the statute of limitations nor the suspension statute, Art. 5537, was pleaded by Wise. As we interpret the voluminous statement of facts, this issue was not deliberately tried. Such evidence as there is on Anderson's pres-

ence in, or absence from, the state came in on other issues, such as whether Anderson was a nonresident and whether Wise exercised diligence in discovering the fraud. This evidence can be summarized as follows: Anderson admitted in his deposition, taken on February 14, 1958, that he was then and had constantly been for 55 years a resident of Warren County, Pennsylvania. His testimony at the trial shows that he was present in Texas when the alleged fraud was committed, and that the meetings during which he made the fraudulent representations to Wise took place on the Wise farm in Texas prior to the execution of the lease on October 25, 1954. He remained in Texas after October 25, 1954, and did some additional work on his oil operations until he "left the latter part of April to go back home". He thus testified that, except for a trip out of Texas during this period "for a week or some such matter", he was present in the state from October 25, 1954, until the latter part of April, 1955. The record is then virtually silent as to his whereabouts after April, 1955. Wise points out that there is no evidence to indicate that Anderson returned to Texas during the remainder of 1955 or until April, 1957; but it is equally true that there is no evidence that he continuously or generally remained out of Texas, or which shows where he was during this period.

There is some evidence that Anderson was not present in Texas on certain specific dates during the months and years following April, 1955. Anderson's Texas lawyer, Higdon, testified that he told Wise that Anderson was in Pennsylvania in October, 1955. Higdon states that Wise came to see him about a delay rental payment he had received and to inquire how he could "get in touch" with Anderson. Wise testified that he had been trying to find Anderson since January, 1955, when he learned that a well had not been drilled on his property within 90 days as promised. Higdon states that he gave Anderson's address to Wise and told him that "Mr. Anderson would be down shortly." A notary acknowledgment to Anderson's affidavit on his assignment of the Wise lease to the Anderson Oil & Gas Company of Texas states that Anderson personally appeared before the notary on November 25, 1955, in Warren County, Pennsylvania. Anderson testified that a unitization agreement, dated May 1, 1956, was sent to him in Pennsylvania. Anderson testified that he was in the Rio Grande Valley shortly after April 12 and met with Wise and Wise's attorney there about April 27, 1957. Anderson, testifying as an adverse witness, testified that he had bought a home in the Valley; that it was for his daughter and son-in-law. He stated that "we live in it too." The date of the purchase or the time that he stayed in the home is not developed

in the record. Apparently he meant that he stayed in his daughter's home when he was in Texas. On cross examination he admitted that he voted in Texas; that he paid his poll tax and voted in Texas for the first time in 1958.

Wise contends that it was proved as a matter of law that Anderson was absent for at least six months: that Anderson stated that he returned to Pennsylvania in April, 1955, and while Wise had no proof that he remained there until October, 1955, there is no evidence that Anderson returned to Texas. The Court of Civil Appeals and Anderson say that the "evidence shows only that Anderson was out of the state on two or three occasions during the limitation period, each of which was of about two weeks duration." We have reviewed the record and do not believe that Anderson's presence or absence was conclusively proved, as a matter of law, either way.

■ The burden of pleading and proving the defendant's absence from the state is upon the plaintiff. *Griffiths v. Travis*, 102 S.W. 2d 445 (error refused, 1937). As stated, Wise did not plead the defendant's absence or that the statute of limitations had been suspended. The character of the evidence in this case demonstrates the reason that the matter should be pleaded.

■ But assuming that Wise is over the hurdle of the issue having been properly raised, the burden of proof is also upon him. His burden is not simply to introduce proof that the defendant left the state but that he was *absent* from the state a sufficient period to toll the statute. It has been held that it is not necessary for the plaintiff to prove the precise periods of the defendant's absence, and that it is sufficient that he establish facts from which the jury might reasonably conclude the defendant had not, in the aggregate, been in the state the full statutory period. *Phillips v. Holman*, 26 Texas 276 (1862). We think, at best, there was an issue of fact for the jury as to whether Anderson was out of the state for sufficient time to toll the statute. No special issues were requested or submitted to the jury upon this important issue. The burden was upon the plaintiff Wise to request issues for the jury and to obtain fact findings of Anderson's absence. His failure to do so constituted a waiver of those issues under Rule 279 of the Texas Rules of Civil Procedure.

Wise relies heavily upon *Phillips v. Holman*, 26 Texas 276 (1862). We believe the case to be distinguishable on several grounds. First, the issue of absence from the state was pleaded

in the *Phillips* case. The defendant likewise pleaded his return to the state and his presence in Texas. This Court said that "the evidence shows that (defendant) Holman left the Republic of Texas in 1840, and *was generally absent from the state for several years.*" The defendant proved his presence in Texas upon specific dates, including his attendance upon the Legislature. A jury issue was raised, and the question was upon the instructions to the jury. The case does not hold that plaintiff would have been entitled to an instructed verdict, i.e., that he established defendant's absence as a matter of law. The defendant in the *Phillips* case contended that the burden was upon the plaintiff to prove the precise period or periods of his absence. It was contended that the jury should be instructed in weighing the evidence presented by plaintiff of the defendant's *absence,* and presented by the defendant of his *presence* in Texas. The Court said it would have been proper to have instructed the jury that when the plaintiff had shown facts from which the jury might reasonably conclude that the defendant had not been in Texas four years between the accrual of the cause of action and the institution of the suit, it then devolved upon the defendant to rebut such reasonable conclusion. This is not the equivalent of saying that Wise would have been entitled to an instructed verdict upon his having introduced evidence that Anderson left the state in April of 1955 and was in Pennsylvania on the isolated dates mentioned above.

The claim against Anderson Oil and Gas Company of Texas arises out of the assignment of the lease to that company by Anderson on November 18, 1955. The essence of Wise's position here is that the statute of limitations did not begin to run against the company until that date because that was when the company derived "the benefit of said fraud" within the meaning of Art. 4004, and therefore that is the date when his cause of action against the company accrued.

There was only one fraud committed against Wise, and that was perpetrated by M. E. Anderson alone. That occurred before the corporation was even formed. It obviously, therefore, could not have participated in the perpetration of the fraud. No argument is made that Anderson was acting as the agent of the corporation when he committed the fraud. The company, therefore, had no direct connection with the fraud. The only connection shown by Wise is that the lease was assigned to the corporation for a recited consideration of $1 and other valuable consideration. The assignment occurred over a year after the fraud was committed.

Doubt has been raised in some cases as to whether a person can constitutionally be made liable for damages for merely "deriving the benefits of said fraud" under Art. 4004. *Ulrich v. Krueger,* 272 S.W. 824 (no writ history, 1925); *Krueger v. Waugh,* 261 S.W. 196 (error dism., w.o.j., 1924). The question is not raised here. As applied to a corporation not in existence when the fraud was perpetrated, we experience difficulty in determining what the Legislature meant by "deriving the benefit of said fraud" so as to make a person or corporation liable in actual damages who had no connection with the fraud. The statute goes further to say that persons *"knowingly* taking advantage of said fraud shall be liable in exemplary damages * * *" (Emphasis ours.)

Be that as it may, we hold that, for limitations purposes, whatever claim Wise may have against the company was necessarily governed by the accrual of the cause of action against Anderson individually. To hold otherwise would lead to an unworkable rule. Limitations would not begin to run against subsequent transferees of the subject matter of the fraud until the date of the transfer or the date of realizing a profit. If, for example, Wise had asserted a claim against Coastal States, which bought the lease from Anderson Oil and Gas Company of Texas on May 16, 1957, for "deriving the benefit of said fraud" under Art. 4004, the cause of action against Coastal States would have accrued no earlier than May 16, 1957, under Wise's theory. If Coastal States had assigned the lease, and it had been further assigned to others, the accrual of the cause of action would be postponed indefinitely.

Anderson Oil and Gas Company also argues that since it is not clear under Art. 4004 what "deriving the benefit of said fraud" means, it could logically be argued that the cause of action, if any, against the Anderson Oil and Gas Company would not accrue until it sold the lease or realized a profit from it. If this argument was sustained, the cause of action against Anderson Oil and Gas Company would not have accrued for limitations purposes until May 16, 1957; and the cause of action against Coastal States would not have accrued until it later sold the lease or otherwise realized a profit.

We have already held that limitations began to run after the expiration of 90 days from the execution of the lease on the cause of action against Anderson individually, and that limitations was not suspended under Art. 5537. We think these con-

clusions apply with equal force to the claim against Anderson Oil and Gas Company of Texas.

Anderson has other points which we do not reach. These include the legal effect of the acceptance by Wise of delay rentals for two years after he knew the well in question had not been drilled, and also the question as to whether an oral promise to drill a well within 90 days may be the basis of a suit when the written lease provided that the lessee, by the payment of delay rentals, could defer the drilling of a well for five 1-year periods. We express no opinions on these questions.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered July 18, 1962.