736 S.W.2d 828 (1987)
Reva U. WRIGHT, Appellant,
v.
GIFFORD-HILL & CO., INC. et al., Appellees.
No. 10-85-025-CV.
Court of Appeals of Texas, Waco.
July 30, 1987.
Rehearing Denied August 20, 1987.
*830 Michael A. Robertson, Robertson, Boyle, Golden & Arnold, P.C., Grand Prairie, and Tony D. Crabtree, Dallas, for appellant.
R. Brent Cooper, Michael W. Huddleston and John M. Weaver, Cowles & Thompson, Dallas, for appellees.

OPINION
THOMAS, Justice.
This is a suit for exemplary damages under the Texas Worker's Compensation Act. See Tex.Rev.Civ.Stat.Ann. art. 8306, § 5 (Vernon 1967). Reva Wright, the surviving spouse of Charles Wright, obtained favorable jury findings of gross negligence, proximate cause and exemplary damages of $450,000 against Gifford-Hill & Co., Inc., her husband's employer. The jury also answered the comparative-negligence issue by apportioning her husband's ordinary negligence at thirty-five percent and Gifford-Hill's gross negligence at sixty-five percent. The court ignored the findings on the liability issues and, notwithstanding *831 the jury's verdict, entered a take-nothing judgment in Gifford-Hill's favor. This court originally affirmed the judgment because Wright had not obtained a finding on the existence and amount of her actual damages. See Wright v. Gifford-Hill & Co., Inc., 705 S.W.2d 868 (Tex.App.Waco 1986, writ granted). The affirmance was based on Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 409 (1934), in which the Texas Supreme Court expressly held that a plaintiff must obtain a finding on actual damages to recover exemplary damages under the Worker's Compensation Act. However, the Supreme Court reversed the affirmance and disapproved its prior holding in Fort Worth Elevators Co. which required a finding of actual damages. See Wright v. Gifford-Hill & Co., Inc., 725 S.W.2d 712, 714 (Tex.1987). The cause was remanded to this court for consideration of those points that had not been reached because of the holding on exemplary damages.
Charles Wright, a maintenance man at a concrete pipe plant operated by Gifford-Hill Pipe Company, was killed on September 8, 1979. Reva Wright originally filed suit against Gifford-Hill American, Inc. on March 12, 1981, which was within two years after her husband's death. However, she did not join Gifford-Hill Pipe Company and Gifford-Hill & Co., Inc. as defendants until February 1, 1982, more than two years after the accident. The court granted a summary judgment in favor of Gifford-Hill American, Inc. prior to trial and, based on the jury's verdict, also entered a take-nothing judgment in favor of Gifford-Hill Pipe Company because the charge had not contained any issues relating to its liability. Wright does not complain on appeal about either of these judgments, but limits her points to the take-nothing judgment in favor of Gifford-Hill & Co., Inc. which the court entered notwithstanding the verdict. The court concluded in its judgment that Gifford-Hill & Co., Inc. was entitled to a judgment because the findings of gross negligence and proximate cause were not supported by any evidence.
Wright's first point is that the court could not enter a judgment notwithstanding the verdict because the findings of gross negligence and proximate cause were supported by some evidence. Gross negligence is that "want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." Williams v. Steves Industries, Inc., 699 S.W.2d 570, 572 (Tex.1985) (quoting from Burk Royalty Co. v. Walls, 616 S.W.2d 911, 920 (Tex.1981)). The emphasis in this definition is on "conscious indifference" because the defendant's mental attitude is what elevates ordinary negligence to gross negligence. Burk Royalty Co., 616 S.W.2d at 922. Therefore, the plaintiff must prove that the defendant was knowingly indifferent to his welfare, that he knew about the peril but just did not care. Id. The defendant's mental state may be inferred from his acts or omissions and may be proved by either direct or circumstantial evidence. Williams, 699 S.W.2d at 573. The plaintiff may prove the defendant had actual subjective knowledge that his conduct created an extreme degree of risk or that a reasonable person would have realized under the surrounding circumstances that his conduct created an extreme degree of risk. Id.
The standard for reviewing a gross-negligence finding under the Worker's Compensation Act is the same as in any other case. Burk Royalty Co., 616 S.W.2d at 920. The question on appeal is whether, from all of the surrounding facts, circumstances and conditions, there is "some evidence" of gross negligence. Id. at 922. The court must apply this traditional test of "no evidence" by considering only the evidence and inferences which tend to support the finding in the light most favorable to the verdict, while disregarding all evidence and inferences to the contrary. Id.
Wright, who had been employed by Gifford-Hill & Co., Inc. only two and one-half months before his death, accompanied Simon Forbes to repair one of the "idler wheels" on Mixer No. 5, one of five large *832 mixers which mixed concrete used in the manufacture of concrete pipe. Each mixer had two idler wheels which stabilized the mixer "tub" as it rotated while mixing the concrete. Two automated trolleys, each equipped with a warning horn that sounded whenever the trolley moved, were situated on rails above the five mixers and used to transport raw materials to the mixers. Forbes and Wright climbed the steps to the elevated "catwalk" that surrounded Mixer No. 5, and Forbes walked along the catwalk to the defective idler wheel located on the "backside" of the mixer. Forbes was examining the idler wheel when he noticed that Wright had not followed him along the catwalk but had stopped on the opposite side of the mixer. Forbes did not know why Wright had stopped there, and he could only see the lower portion of Wright's body from where he stood at the backside of the mixer. Wright was apparently standing above the catwalk on the idler wheel located at the front of the mixer. Mixer No. 5 had been stopped and its tub already cleaned by a cleaning crew before Wright and Forbes arrived to repair the idler wheel.
Forbes heard the warning horn of a trolley as it proceeded from its "resting place" to a "pickup station" where it picked up raw materials to be delivered to Mixer No. 3, the only other mixer operating at that time. He recognized that Wright, who was standing on the idler wheel above the catwalk, would be struck by the trolley as it passed over Mixer No. 5 on its way to Mixer No. 3. Forbes tried to warn Wright several times by telling him to "watch the trolley", but Wright did not respond to the warnings and was struck and killed.
A corporation has a non-delegable duty to provide rules and regulations for the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work, and to select careful and competent fellow servants. Burk Royalty Co., 616 S.W.2d at 923-24. The record contains some evidence that Gifford-Hill & Co., Inc. knew through its vice-principals that the automated trolley system created a dangerous hazard for the employees working on the mixers, but that it nevertheless ignored the danger and failed to adequately warn its employees. Jim Dorris, the head of employee relations for Gifford-Hill & Co., Inc., had studied the hazards to employees working around the mixers and recognized that the trolley system and mixers created a serious safety problem. John Ridinger, the head of the safety department for Gifford-Hill & Co., Inc., admitted that the company knew the automated trolley system was a "serious hazard to workers in the area." He even reported in writing to his superiors after one of his periodic safety inspections that a worker had been hit by a trolley and knocked off of a mixer. This incident had occurred approximately two years before Wright was killed. The jury could have reasonably concluded from this evidence that Gifford-Hill & Co., Inc. had actual knowledge through its vice-principals that the automated trolley system, as it was designed and operated, created a serious safety hazard for its employees and that it had actual knowledge that a similar accident, although apparently not resulting in any serious injury, had already occurred.
Dorris also admitted that new maintenance employees were not given any written or verbal warnings or instructions about safety hazards before they began their employment. Instead, Gifford-Hill & Co., Inc. relied on the "buddy system" and "word of mouth" from low-level supervisors and co-workers to warn new employees about hazards at the plant. Dorris, who held monthly safety meetings for the employees, could not recall ever discussing the dangers of the trolley system at the safety meetings. He also admitted that Gifford-Hill & Co., Inc. had not adopted any measures or means to enforce compliance by its employees with the company's "safety program." Dorris further admitted that management knew employees were leaving "hinged guards" in a raised position after the mixers were cleaned, but that the hinged guards were not replaced with fixed guards until after Wright's death.
The jury could have reasonably inferred from Simon Forbes' testimony that Wright *833 was struck by the trolley while he was standing on the idler wheel trying to lower a hinged guard that had been left in a raised position by the crew that had just finished cleaning Mixer No. 5. The jury could have also reasonably believed from this evidence that, despite having actual knowledge that the trolley system created a serious safety hazard, Gifford-Hill & Co., Inc. failed to implement or enforce any meaningful safety program to warn or protect its employees from the dangers of the trolley system. Failure to adopt safety standards or to implement a meaningful safety program is "some evidence" of an "entire want of care." See Burk Royalty Co., 616 S.W.2d at 923. Considering only the evidence and inferences which supported the finding of gross negligence and disregarding all evidence and inferences to the contrary, the gross-negligence finding was supported by "some evidence" and could not be ignored by the court.
Wright also, alleges under her first point that there was "some evidence" to support the proximate-cause finding. Proximate cause has two elements: (1) cause in fact and (2) foreseeability. Williams, 699 S.W.2d at 575. A negligent act or omission is a "cause in fact" if it is a substantial factor in bringing about the injury and without which no harm would have resulted. Id. "Foreseeability" means that a person of ordinary intelligence should have anticipated the danger that his negligent act or omission created. Id. The jury could have reasonably found that the accident would not have happened if Gifford-Hill & Co., Inc. had implemented a meaningful safety program to warn Wright of the trolley hazard. Furthermore, the jury could have reasonably found that Gifford-Hill & Co., Inc. had actual knowledge, or at least should have foreseen, that its failure to implement a meaningful safety program to adequately warn Wright of the dangers of the trolley system would result in his death or injury. Accordingly, the court could not ignore the finding of proximate cause because it was supported by "some evidence." See id. at 574. Point one is sustained.
Wright's second point is that the court should have not submitted the issue on comparative negligence because the comparative-negligence statute only applies when both parties are guilty of ordinary negligence. See Tex.Civ.Prac. & Rem. Code Ann. § 33.001 (Vernon 1986). She argues that ordinary negligence cannot be used to reduce exemplary damages resulting from gross negligence. This court has already rejected that argument in Pedernales Elec. Coop., Inc. v. Schulz, 583 S.W.2d 882, 885 (Tex.Civ.App.Waco 1979, writ ref'd n.r.e.); see also Jannette v. Deprez, 701 S.W.2d 56, 59 (Tex.App.Dallas 1985, writ ref'd n.r.e.). Furthermore, assuming that the court erred when it submitted the comparative-negligence issue, Wright cannot show harm unless she was entitled to a judgment. As discussed below, she was not entitled to a judgment based on the verdict. Point two is overruled.
Gifford-Hill & Co., Inc. argues in a cross-point that it was entitled to a judgment notwithstanding the verdict based on its affirmative defense of limitation. Wright contends that her suit against Gifford-Hill American, Inc., which was filed within two years after her husband's death, tolled the statute of limitation against Gifford-Hill & Co., Inc. She characterizes her amended pleading, in which she joined Gifford-Hill & Co., Inc. as a defendant, as having merely "corrected" the defendant's name. She also argues that Gifford-Hill & Co., Inc. waived limitation as an affirmative defense when it did not obtain a finding to establish its existence. However, Gifford-Hill & Co., Inc. claims that Wright's pleading shows on its face that her suit against it was conclusively barred by limitation, which required her to introduce evidence and obtain findings on facts that would have removed her cause of action from the bar. It contends she waived any equitable defense to the bar of limitation when she failed to request any such issues.
The general rule is that filing suit against one corporation will not toll limitation against a different corporation or entity. Continental Southern Lines, Inc. *834 v. Hilland, 528 S.W.2d 828, 829 (Tex.1975). A suit mistakenly filed against the "wrong" corporation places no duty on the "correct" corporation to intervene and point out the error, although it knows that the plaintiff has filed suit against the wrong defendant. Matthews Trucking Co. v. Smith, 682 S.W.2d 237, 239 (Tex.1984). Likewise, suit against a subsidiary corporation will not toll limitation against the parent corporation, regardless of common stock ownership, a duplication of officers and directors, or common control resulting from stock ownership, unless management and operation of the parent and subsidiary are so assimilated that the subsidiary is simply a name or conduit through which the parent conducts its business. Gentry v. Credit Plan Corporation of Houston, 528 S.W.2d 571, 573 (Tex.1975). In such event, the corporate fiction is disregarded on the theory that the subsidiary is the alter ego of the parent, and suit against the subsidiary is the same as suit against the parent for the purpose of limitation. Id. at 575.
Ordinarily, the party relying on limitation must plead it as an affirmative defense and obtain a jury finding on any fact issues necessary to establish its existence. See Tex.R.Civ.P. 94. However, the plaintiff has the burden of alleging, conclusively proving or obtaining favorable findings on fact issues that will avoid limitation as a bar when the petition shows on its face that suit against the defendant was not timely instituted. Wise v. Anderson, 163 Tex. 608, 359 S.W.2d 876, 880 (1962). The failure to obtain such findings results in a waiver of any claim that facts existed which would defeat the bar of limitation. Id. 359 S.W.2d at 881.
Wright plead that she originally filed suit against Gifford-Hill American, Inc. within two years after her husband's death and that she had merely "corrected" the defendant's name to Gifford-Hill Pipe Company and Gifford-Hill & Co., Inc.[1] She also alleged that Gifford-Hill & Co., Inc. was the parent corporation that owned Gifford-Hill Pipe Company and fifty percent of the stock of Gifford-Hill American, Inc. Finally, she plead the following:
Defendants were aware that Plaintiff had not stated the correct name of Defendant within a week of the time that they were served with citation. They caused the answer to be filed by the same attorney who defended them throughout this case. They had a full and fair opportunity to defend themselves from the beginning of this case. They had knowledge of the true facts of the accident and had actual notice of the suit from the beginning.
Gifford-Hill & Co., Inc. admitted that it owned Gifford-Hill Pipe Company and fifty percent of the stock of Gifford-Hill American, Inc. and that both corporations operated plants located adjacent to each other in Grand Prairie. R.O. Evans, a vice-president of Gifford-Hill & Co., Inc., testified that he was responsible for the production and sale of the products of the "construction and materials group", which included the two plants in Grand Prairie and several plants in Oklahoma, Louisiana and Texas. He said that he was also responsible for reviewing accident reports and taking action to improve safety at the plants under his supervision. John Ridinger, the head of the safety department for Gifford-Hill & Co., Inc., testified that he was responsible for making periodic safety inspections of the two plants in Grand Prairie.
The question is whether this evidence conclusively proved that the management and operation of Gifford-Hill American, Inc. and Gifford-Hill & Co., Inc. were "assimilated" to such an extent that Gifford-Hill American, Inc. was simply a conduit through which Gifford-Hill & Co., *835 Inc. conducted its business.[2]See Gentry, 528 S.W.2d at 573. If so, then Wright would have removed her cause of action from the bar of limitation as a matter of law, and her suit against Gifford-Hill American, Inc. within the limitation period would have also tolled limitation against Gifford-Hill & Co., Inc. See id. at 575.
The evidence conclusively established that Gifford-Hill & Co., Inc. was the parent corporation of Gifford-Hill American, Inc. and that officers of the parent exercised some control over the subsidiary's operations. However, evidence of a parent-subsidiary relationship, even of common stock ownership, interlocking management, and common control resulting from stock ownership, did not automatically make Gifford-Hill American, Inc. the alter ego of Gifford-Hill & Co., Inc. See id. at 573. To disregard the corporate fiction, the evidence had to show that the management and operation of the two companies were so assimilated that Gifford-Hill American, Inc. was nothing more than the alter ego of Gifford-Hill & Co., Inc. See id. Evidence of a business relationship between Gifford-Hill American, Inc. and Gifford-Hill & Co., Inc., although sufficient to raise a fact issue on "assimilation", fell short of conclusively establishing that the subsidiary was a mere conduit for the parent. Accordingly, Wright had the burden of requesting special issues to establish that fact. See Wise, 359 S.W.2d at 881. Having failed to request any issue to resolve this fact question, she waived any claim that facts existed which would have removed her cause of action from the bar of limitation. See id. Gifford-Hill & Co., Inc.'s cross-point is sustained.
Therefore, Gifford-Hill & Co., Inc. was entitled to a take-nothing judgment on the ground that Wright's suit against it was barred by limitation. It based its motion for a judgment notwithstanding the verdict on two grounds: (1) the findings of gross negligence and proximate cause were not supported by any evidence, and (2) Wright's cause of action was conclusively barred by limitation. The court should have entered the judgment based on the limitation ground rather than on the evidentiary ground of "no evidence." However, the court reached the right result, but gave the wrong reason for its action. An appellate court must affirm when the trial court gives an incorrect reason for an otherwise correct judgment. See City of Irving v. Dallas County Flood Control Dist., 383 S.W.2d 571, 575 (Tex. 1964). Although Wright's first point is sustained, the judgment must be affirmed based on the limitation defense.
This court is aware of the decision in Continental Southern Lines, Inc. in which the plaintiff had sued Texas Trailways, Inc., the "wrong" defendant, within the period of limitation and then joined Continental Southern Lines, Inc., the "correct" defendant, after limitation had expired. See Continental Southern Lines, Inc., 528 S.W.2d at 829. The Texas Supreme Court reversed the judgment that had been incorrectly entered against Continental Southern Lines over its limitation defense but, instead of rendering judgment against the plaintiff, remanded the cause "in the interest of justice." See id. at 830-31. The court outlined the circumstances which justified a remand "in the interest of justice":
While there is no evidence here that the bus companies involved set about to deprive anyone of his or her rights, it is apparent that they have made a conscious effort to make it appear to the public and to their customers that they are `Continental Trailways.' There is evidence that the corporations have the *836 same agent for service; and it developed on the oral argument that they use the same attorneys in this area, at least in Houston. There was also some indication on oral argument that the service of citation may have actually been forwarded to Continental Southern Lines, Inc., but there was no indication as to when this may have occurred. The driver of the bus from which plaintiff fell, soon after the accident, filled out a report of the accident and sent it to his home office, the office of the `real defendant,' Continental Southern Lines, Inc. From the above it might be inferred that its people became alerted and that its investigative people had prompt notice of the accident. Upon a retrial, the plaintiff will also have the opportunity to prove, if she can, that with knowledge of the facts of the accident, Continental Southern Lines, Inc., caused an answer to be filed by Continental Trailways, Inc., or acquiesced in such action. The record, however, was not fully developed; and there are only inferences, but no finding, that Continental Southern Lines, Inc., was actually notified and had a fair opportunity to defend itself before the period of limitations had run.

* * *
If the substance of the facts set out above are found upon a new trial, it would be a misapplication of the statute of limitations to hold that the plaintiff's action was barred. Continental Southern would then have known or should have known that it would be the target if plaintiffs ever learned the new facts, and it had as much opportunity to prepare a defense as if it had been named a defendant in the original petition.
Id. The decision in Continental Southern Lines, Inc. does not require a reversal and remand because, here, the court correctly entered a judgment in favor of Gifford-Hill & Co., Inc. but for the wrong reason. Without a reversal there can be no remand. See Uselton v. State, 499 S.W.2d 92, 99 (Tex.1973). Therefore, the decision in Continental Southern Lines, Inc. does not control the result. The judgment is affirmed.
NOTES
[1] This is not a "misnomer" case, as Wright apparently contends, in which the plaintiff sues the correct defendant but merely misnames him. See Matthews Trucking Co., 682 S.W.2d at 238. A plaintiff may "correct" the name of the defendant in a "misnomer" case even after limitation has expired. See Adams v. Consolidated Underwriters, 133 Tex. 26, 124 S.W.2d 840, 841-42 (1939).
[2] Wright relies on the deposition testimony of Ronald Bradford to support her assertion that Gifford-Hill & Co., Inc. had full knowledge of the facts from the time Gifford-Hill American, Inc. was served with process and had not been prejudiced by being made a defendant after the limitation period had expired. Bradford's deposition, although a part of the record on which the court based the summary judgment in favor of Gifford-Hill American, Inc., was not admitted as evidence during the trial on the merits against Gifford-Hill & Co., Inc. Therefore, the deposition cannot be considered in an appeal on the merits.