IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-10711

CADLES OF GRASSY MEADOWS II, L.L.C.,
by Assignment from Olney Savings Association,

Plaintiff-Appellant,

THE STATE OF TEXAS,

Intervenor Plaintiff-Appellant,

v.

DAVID GOLDNER; ROBERT GOLDNER,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Texas

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.
JERRY E. SMITH, Circuit Judge.

Cadles of Grassy Meadows II, L.L.C. ("Cadles"), sued David and Robert Goldner to recover on a debt. The court dismissed the suit as time-barred, holding that a Texas provision tolling the statute of limitations against out-of-state

defendants violates the Commerce Clause of the United States Constitution. We affirm the dismissal.

I.

The Goldners were partners in Equivest Properties, a Texas general partnership. In 1985 and 1988, Equivest executed promissory notes in Texas to pay about $2.7 million to Olney Savings Association. In their individual capacities, the Goldners agreed to guarantee Equivest's debt to Olney, and they listed a Texas address in the guarantees. The notes were further secured by deeds of trust that created liens on real property owned by Equivest in Texas. The notes were due on December 31, 1988, at which time a claim for recovery on the debt accrued.

By the end of 1988, the Goldners had left Texas and did not return. The full debt was not paid, and the Goldners resided in New York. In 1992, Olney, now doing business as AmWest Savings Association, sued Equivest and the Goldners in Texas state court to recover unpaid portions of the debt. In 1994, the court rendered a judgment against the defendants for the unpaid principal, interest, costs, and attorneys' fees. Equivest became defunct,[1] and the state court granted the Goldners' motion to void the judgment as to themselves.[2]

Through a series of assignments, Cadles in 2004 acquired all interest in the debt and judgment and in 2006 sued the Goldners for unpaid amounts due. Cadles maintained that its suit to recover on the almost eighteen-year-old debt was timely, because the applicable statute of limitations[3] was tolled by a Texas

_____

[1] The remaining defendant, who had been an Equivest partner, had died.

[2] The judgment was voided because of insufficient service of process on the ground that process was sent to the wrong New York addresses.

[3] In diversity cases involving state-law claims, federal courts apply applicable state limitations statutes. Tex. Soil Recycling, Inc. v. Intercargo Ins. Co., 273 F.3d 644, 649 (5th Cir.

(continued...)

statute extending limitations against out-of-state defendants: "The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence." TEX. CIV. PRAC. & REM. CODE § 16.063. Judicial gloss on that statute has clarified that tolling applies to Texas residents who are not present in Texas and to nonresidents who are not present in Texas but were present there when they contracted the debt or when the cause of action accrued. See Jackson v. Speer, 974 F.2d 676, 678-79 (5th Cir. 1992) (citing state cases).

Whether applied to a resident or nonresident, however, the provision tolls limitations against defendants for as long as they are not present in Texas. It is undisputed that the Goldners were present in Texas when they incurred the debt but have been absent from Texas and have not been there for an aggregate period of four years since accrual of the cause of action.

On diversity grounds, the Goldners removed the suit to federal court and moved for judgment on the pleadings, arguing that the claim is barred by limitations because the Texas tolling provision violates the dormant commerce clause. Cf. U.S. CONST., art. I, § 8, cl. 3. The State of Texas intervened to defend the statute's constitutionality. Finding the tolling statute unconstitutional, the district court deemed the suit time-barred and entered judgment for the Goldners.

## II.

### A.

We review a judgment on the pleadings de novo. Nunez v. Simms, 341

---

[3] (...continued)
2001). The parties disagree about whether the applicable limitations period is four years, per TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3), or two years, per TEX. PROP. CODE § 51.003(a). All parties, however, concede that Cadles' cause of action accrued in 1988 and that the applicable limitations period—be it two years or four—has long since run.

F.3d 385, 388 (5th Cir. 2003). We accept the complaint's well-pleaded facts as true and view them in the light most favorable to the non-movant. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

## B.

In *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), the Court invalidated an Ohio tolling provision similar to the Texas statute at issue here. Ohio, like Texas, tolled limitations for as long as a defendant was not present in the state. The Court explained that when "a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce," id. at 893, and "weigh[ed] and assess[ed] the State's putative interests against the interstate restraints to determine if the burden imposed is an unreasonable one," id. at 891. The Court concluded that "the burden imposed on interstate commerce by the tolling statute exceeds any local interest that the State might advance." Id. *Bendix* compels the same conclusion here.

The dormant commerce clause analysis requires a "two-tiered approach." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578 (1986). "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry." Id. at 579. "When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce

4

clearly exceeds the local benefits." Id.[4]  In Bendix, 486 U.S. at 891, the Court observed that the Ohio tolling statute "might have been held to be a discrimination that invalidates without extended inquiry," i.e., at the first tier, but the Court nevertheless chose to apply the balancing test, and we do the same here.

As an initial matter, however, Cadles maintains that the Goldners were not "out-of-state persons . . . engaged in commerce," id. at 893, so the Commerce Clause does not even reach the activities in question.  In the parlance of the balancing test, this argument amounts to a claim that applying the Texas tolling statute to the Goldners has no effects on interstate commerce, be they direct or indirect.  We disagree.

The Texas provision deprives defendants of a limitations defense by virtue of the fact that they are out of state.[5]  It thus restricts one's freedom to incur business obligations in Texas and then to leave the state without detriment.  That is what the Goldners did:  They obtained a loan in Texas and left for New York, carrying the debt obligations with them.  The transportation of persons between states falls within the ambit of the Commerce Clause, see, e.g., Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 253-57 (1964); Edwards v. California, 314 U.S. 160, 173 (1941), and though Cadles maintains that the Goldners "trans-

---

[4] This balancing approach was first set forth in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) (citation omitted), in which the Court explained,

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.  If a legitimate local purpose is found, then the question becomes one of degree.  And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

[5] The tolling statute eliminates "the defense of limitations in all suits against nonresidents who incur an obligation in Texas and go back to their home state without returning to Texas.  In such cases, the statute is tolled indefinitely."  Dicker v. Binkley, 555 S.W.2d 495, 497 (Tex. App.SSDallas 1997, writ ref'd n.r.e.).

ported nothing from Texas to New York except themselves," Cadles overlooks that the Goldners brought their debt along with themSSi.e., they effectively "transported" a commercial obligation.[6] The Goldners' actions plainly affected interstate commerce and therefore implicated the Commerce Clause.

Turning to burdens and benefits, the effects of the Texas tolling statute are substantially similar to those of the Ohio statute struck down in Bendix. The Bendix Court first assessed the Ohio statute's burden on interstate commerce and observed that "[a]lthough statute of limitations defenses are not a fundamental right," a state "may not withdraw such defenses on conditions repugnant to the Commerce Clause." Bendix, 486 U.S. at 893.

Because the Ohio statute tolled the statute of limitations while defendants were not present in Ohio, the Court held that it burdened out-of-staters. Although an out-of-state business could have established a presence in Ohio and avoided tolling by appointing a resident agent for service of process in that state, doing so would have subjected the business to the general jurisdiction of the Ohio courts. That resulted in a Hobson's choice: "The Ohio statutory scheme thus forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity." Id. That choice was a "significant burden" on interstate commerce. Id.

Like the Ohio statute, the Texas statute tolls limitations while a defendant is not present in Texas. The state, however, contends that its statute does not

---

[6] Cf. Heart of Atlanta Motel, 379 U.S. at 357 ("'Commerce among the states . . . includes the transportation of . . . p[ro]perty.'") (quoting Hoke v. United States, 227 U.S. 308, 320 (1913)). The Goldners originally transacted with a federally insured bank, and the financial instruments were transferred in a series of assignments from that bank to a Delaware limited partnership located in Georgia and then to a West Virginia company located in Ohio. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause.").

burden out-of-staters because, unlike the situation in Ohio, out-of-staters can be present in Texas without subjecting themselves to the general jurisdiction of the Texas courts. In other words, Texas maintains that it has no Hobson's choice: To avoid tolling, an out-of-state defendant need only appoint a resident agent and need not thereby be subject to the state's general jurisdiction.

The state's argument relies on the assumption that individuals such as the Goldners can establish presence in Texas for tolling purposes by appointing resident agents. The state cites two cases holding that a corporation that establishes a "registered agent for service of process" in Texas is "present" for purposes of the tolling provision.[7] The Goldners, however, point out that no Texas court has applied the tolling provision to individuals who appoint resident agents, as distinguished from corporations that register resident agents with the state.[8] In the cases addressing what constitutes "presence" for individuals, the courts have

---

[7] G. Richard Goins Constr. Co. v. S.B. McLaughlin Assocs., Inc., 930 S.W.2d 124, 128 (Tex. App.SSTyler 1996, writ denied) ("The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence. However, a defendant that maintains a registered agent for service of process within the state is not absent from the state for purposes of [the tolling provision].") (citations and quotations omitted) (emphasis added); see also Davis v. B.E. & K., Inc., 595 S.W.2d 895, 896 (Tex. Civ. App.SSEastland 1980, writ ref'd n.r.e.) ("[B.E. & K. corporation] maintains an authorized agent for service within this state. Such a defendant is not 'without the limits of this State' within the meaning of the tolling statute.") (emphasis added).

[8] The state does point to one Texas decision that did not distinguish between individual and corporate defendants when determining whether the defendants were present for tolling purposes. The court observed in a single breath that "the Brown entities [individuals] and D.H. Morgan [corporation] are nonresidents, do not maintain an agent for service of process within Texas, and were not present within the state of Texas on May 17, 1992." Howard v. Fiesta Tex. Show Park, Inc., 980 S.W.2d 716, 722 (Tex. App.SSSan Antonio 1998, pet. denied). Without specifying whether it was speaking about the individuals or the corporation, the court also observed, "'Presence' within the state of Texas occurs if an agent, employee, or other representative was within the territorial limits of the state." Id. at 723.

The cited case is ambiguous at best. Its only plain holding is that the tolling statute applies where an individual or corporate defendant neither has a physical presence in Texas nor appoints a resident agent. That is of course true, but relatively unilluminating, because it is consistent with both the Goldners' and the state's arguments.

focused exclusively on physical presence and have not discussed the possibility of individuals' appointing agents.[9]

Although an individual may appoint an agent to accept process, he cannot formally register that agent for service of process with the state. The Goldners advance a plausible case that this distinction makes a difference, because the registration makes the out-of-state business readily identifiable as an entity amenable to service within the state. There is reason to think that the animating principle behind the Texas courts' understanding of "presence," for tolling purposes, is the open and notorious nature of a defendant's amenability to service.[10] The state suggests that the Goldners could have put Cadles on notice of their appointment of a Texas agent by designating that agent in the debt instruments. But Texas courts had not made plain at the time those instruments were signed, and have not made plain since, that an individual who designates a resident agent in the instruments can avoid tolling.

---

[9] See Dicker, 555 S.W.2d at 497 ("[S]ince [the defendant] was thus physically present in Texas at the time the obligation arose, his subsequent absence from the state tolled the running of limitations . . . . We recognize that the practical effect of this holding is to eliminate the defense of limitations in all suits against nonresidents who incur an obligation in Texas and go back to their home state without returning to Texas. In such cases, the statute is tolled indefinitely."); Wise v. Anderson, 359 S.W.2d 876, 879 (Tex. 1962) ("[The tolling statute] does apply to nonresidents who were present in the state at the time the cause of action accrued or had its inception and who later leave the state."); Stone v. Phillips, 176 S.W.2d 932, 933 (Tex. 1944) (holding that though defendant "never abandoned her home in Texas" and "always considered herself a citizen of Texas," the fact that "the defendant was absent at the time the right to sue accrued, and remained absent until only a short time prior to the filing of the suit," triggered the tolling provision).

[10] In an old case construing the predecessor to the current tolling statute, a Texas court noted the following:

> If [the defendant] came into the state openly and publicly, under circumstances which afforded [the plaintiff] reasonable and fair opportunity, by the exercise of ordinary diligence, to obtain personal service upon him, we think the time he so remained should be counted in his favor [for tolling purposes], whether [the plaintiff] had actual knowledge thereof or not.

Montgomery v. Brown, 28 S.W. 834, 834 (Tex. Civ. App.SSFort Worth 1894, no writ).

We cannot know whether the Texas courts will ever deem appointment of a resident agent sufficient for an individual to establish "presence" under the tolling statute, and we need not wager an answer today. It is enough for our purposes to recognize that it remains an open question. So long as that is so, it would be mistaken to say that the Goldners were unburdened by the tolling provision just because they could have done something the Texas courts mightSSor might notSSin the future deem sufficient to avoid tolling.[11] At the time the instruments were signed, and now, the Texas courts have explicitly recognized only two ways to avoid tollingSSeither an individual's physical presence in Texas or a corporation's registration of an agent in Texas. To require the Goldners to guess, ex ante, that the courts would recognize a third way, ex post, would impose too great a burden.[12]

We conclude, therefore, that the burden the Texas statute imposes on the Goldners is at least as great as the one that the Ohio statute imposed in Bendix. Indeed, it would have been even more difficult for the Goldners to avoid tolling than it was for the Bendix defendants: Not only would the Goldners have had to subject themselves to the general jurisdiction of Texas courts, but they would also have had to move physically back to Texas.[13]

We must next weigh that burden against the local benefit of the Texas tolling statute. In Bendix, which involved a corporate defendant, the Ohio stat-

---

[11] In the event the Texas courts do create an exception for individuals who appoint resident agents, we make no judgment as to whether such exception would be sufficient to satisfy the dormant commerce clause.

[12] See Bendix, 486 U.S. at 894-95 (deriding as "speculative" the suggestion that defendant could have avoided tolling merely by designating an agent for service of process in its contract with plaintiff, because "there is no statutory support" for that option).

[13] Because the Goldners were burdened with having to move back to Texas, we need not address the state's argument that there is a fact issue regarding whether the Goldners took any actions that would have subjected them in any case to the general jurisdiction of the Texas courts regardless of the tolling statute. The burden here is having to move back to Texas, not the burden of subjecting oneself to jurisdiction.

9

ute advanced the state's interest in ensuring plaintiffs had the "ability to execute service of process on foreign corporations and entities." Bendix, 486 U.S. at 894. Though it recognized such interest as "important," id. at 893, the Court concluded that the Ohio tolling statute was not necessary to satisfy it:

> Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long-arm statute would have permitted service on [the defendant] throughout the period of limitations.

Id. at 894. The Court acknowledged that "serving foreign corporate defendants may be more arduous than serving domestic corporations or foreign corporations with a designated agent for service," id. at 893, but that interest in easing the difficulty of service is "insufficient to withstand Commerce Clause scrutiny," id. at 894. In sum, the Bendix Court deemed the tolling statute unnecessary to advance Ohio's interest in ensuring that it be possible for residents to sue out-of-state defendants, and the Court found it unjustified to advance an interest in merely making it less arduous to sue out-of-state defendants.

Cadles and the state do not contest that the Texas long-arm statute, like the Ohio statute, makes it possible for residents to sue out-of-state defendants. See TEX. CIV. PRAC. & REM. CODE § 17.041 et seq. As in Bendix, modern personal jurisdiction doctrine and the existence of a long-arm statute make the Texas tolling provision no longer necessary to advance the provision's traditional purpose.[14] And as in Bendix, it will not suffice to defend the statute on the ground

---

[14] Indeed, the Texas courts long ago acknowledged the tolling provision's original purpose, in the days before the existence of long-arm jurisdiction. The tolling provision was "intended to protect [domestic creditors] from the inconvenience and loss, to which they would be exposed by the absence of their debtors and consequent immunity of the latter from process and judgment." Ayres v. Henderson, 9 Tex. 539, 539 (1853).

that it makes serving out-of-state defendants less arduous.[15]

The state suggests that the conclusion would be different if the Goldners could not be found for service, thus making it effectively impossible for Cadles to serve them. That sort of factual impossibility of service might be analogous to the legal impossibility of service that would have existed absent a long-arm statute. Indeed, Justice Scalia suggested that possibility in his Bendix concurrence, observing, "A tolling statute that operated only against persons beyond the reach of Ohio's long-arm statute, or against all persons that could not be found for mail service, would be narrowly tailored to advance the legitimate purpose of preserving claims." Bendix, 486 U.S. at 898 (Scalia, J., concurring in the judgment). Two courts have upheld the constitutionality of Mississippi and New Jersey tolling statutes that tolled limitations where it was impossible, or at least very difficult, for out-of-state defendants to be found for service.[16]

The Mississippi and New Jersey cases, however, involved narrowly written statutes that triggered tolling only where the defendants could not be served because their whereabouts were unknown. The Texas statute, like the Ohio statute in Bendix, is not so narrowly drawn.[17] That is perhaps why the seven-mem

---

[15] Cadles and the state argue that the local interest here is an interest merely in making it easier for domestic plaintiffs to serve out-of-state defendants, because "distance adds expense and difficulty," and Cadles "may have been unable to procure valid contact information for the Goldners despite diligent efforts." As explained above, however, that argument was acknowledged in Bendix and was rejected as insufficient.

[16] See Vice v. Danvid Window Co., 2007 WL 1668637, at *2 (S.D. Miss. 2007) ("The Court finds that Miss. Code Ann. § 15-1-63 does not violate the Commerce Clause since the statute only tolls the statute of limitations when the defendant is not amenable to service of process because his whereabouts are unknown . . . ."); Blyth v. Marcus, 517 S.E.2d 433, 435 (S.C. 1999) ("We held the period of limitations may be tolled only when the name and location of the defendant are not known to the plaintiff. Since we have limited the application of § 15-3-30 [in that previous case], the statute is now substantially different than the Ohio statute struck down in Bendix.").

[17] Nor can we narrow the statute by construing it to avoid a constitutional question, because the statute is not ambiguous on this point. See Crowell v. Benson, 285 U.S. 22, 62 (continued...)

ber majority opinion in Bendix never mentioned the impossibility-of-service argument, and even Justice Scalia rejected it as applied to the Ohio statute, which was substantially the same as the Texas statute at issue here .

In sum, the tolling statute's balance of burdens and benefits in this case is not materially different from the balance deemed unconstitutional in Bendix. As the Court did in Bendix, we conclude that the "the burden imposed on interstate commerce by the tolling statute exceeds any local interest that the State might advance." Bendix, 486 U.S. at 891. Accordingly, the judgment of dismissal is AFFIRMED.

---

[17] (...continued)
(1932) ("[W]hen the validity of an Act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (emphasis added). To accept the state's argument, we would have to rewrite the statute, a job the federal courts are wise to leave to the legislature.

The state contends that we should construe and weigh the local benefits of the tolling provision in an "as applied" manner, determining whether the state has an interest in tolling limitations against the particular defendants in this case because there is a fact question about whether it was effectively impossible to serve the Goldners with process. But there is no such fact question: As applied to the Goldners, the Texas statute would toll limitations against the Goldners regardless of whether, as discussed above, they were effectively impossible to serve. And we cannot read the statute to make an exception, as applied to the Goldners, that the statute does not make.