IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-328-CV




HOWARD AND BILLY CLAGETT,



 APPELLANTS


vs.





HENRY WENDLANDT, JR.,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY



NO. 4440, HONORABLE HOWARD S. WARNER II, JUDGE PRESIDING



 





 Henry Wendlandt ("Wendlandt") sued Howard B. Clagett, Billy Clagett
("appellants") and Fairway Estates, Inc. for violations of the Deceptive Trade
Practices--Consumer Protection Act ("DTPA") in connection with the sale of a tract of land
located in Dripping Springs, Texas. Tex. Bus. & Com. Code Ann §§ 17.41--.63 (West 1987
& Supp. 1992). Following a trial before the court, the trial court rendered judgment for
Wendlandt against Howard Clagett and Billy Clagett. We will reverse the judgment and
remand the cause with instructions.



THE CONTROVERSY


 Howard Clagett and Billy Clagett, father and son, through a corporation known
as Fairway Estates, Inc. ("the corporation"), owned a sizable plot of land in Dripping Springs,
Texas, which they held for investment purposes. Since Howard had been involved in the real
estate business all his life, he handled the transactions of the corporation. Billy's role in the
corporation was limited. The corporation paved streets and established a private water supply
system to the land. The land was platted for residential use and designated as Ryan Hills
Subdivision. Section One was subdivided into twenty-six lots and Section Two was subdivided
into three lots.

 In March 1987, the corporation was in need of funds. Howard approached
Henry Wendlandt to obtain a loan. In response, Wendlandt agreed to tender $5000 upon the
condition that the corporation deed to him Lot One, Section Two of Ryan Hills Subdivision. 
At that time, Wendlandt inquired about the utilities available for the lot. Howard assured him
that electricity and water utilities were available to the lot, but that sewage and gas were not
available.

 Wendlandt was shown the subdivision plat map for Section Two. This plat
contained language suggesting that water utilities were available to the subdivision, as long as
the Texas Health Department and the San Marcos--Hays County Health Department approved
the system. The title policy purchased for the land had similar language.

 Wendlandt agreed to the transaction and gave the corporation an option to
repurchase the lot within one year for $5750. The corporation executed the deed to Wendlandt
on March 16, 1987. The corporation dissolved on March 10, 1988, without exercising its
right to repurchase the lot. The corporate assets, which consisted of unsold portions of the
original land, were transferred to Howard and Billy.

 In September 1988, well after the redemption right had expired, Wendlandt
agreed to sell the land to Ray Case for $6830, its appraised tax value. Case and Wendlandt
entered into an oral agreement for the sale of the land. Before closing, Case inquired into the
availability of water and waste-water utilities. Wendlandt advised Case to contact Howard in
this regard because Howard was the subdivision developer. Howard told Case that water to
the property could be obtained only from the private water supply which serviced Section One. 
Further, he stated that if a substantial number of residents occupied Section One of the
subdivision, water could not be guaranteed in perpetuity. 

 Case relayed this potential water problem to Wendlandt, and Wendlandt
approached Howard for an explanation. Howard produced a plat map for Section Two of the
subdivision. On it, he had blocked out the language on this plat that discussed the water
utilities. Howard then told Wendlandt that the private water system was originally intended
only for Section One and that Wendlandt's title policy and plat map were incorrect. 

 Unsatisfied with the water supply as Howard had represented it, Case inquired
into the possibility of drilling his own well. The Hays County Commissioner's Court
informed Case that the lot was not large enough to support a private well and a variance was
necessary. The variance was denied, Case abandoned his interest in the lot, and the deal fell
through. 

 On December 21, 1988, Wendlandt sent a letter to Howard demanding a
rescission of the 1987 transaction, and asking $6830 for the return of the lot. Howard refused
and Wendlandt brought suit against Howard on September 15, 1989, for violations of the
DTPA. Howard did not retain legal counsel. On September 19, 1990, he tendered a
jury fee to the county clerk, but did not make a formal written demand to the court for a jury
trial, and failed to notify opposing counsel of his intention for a jury trial. On October 23,
1990, Wendlandt amended his pleading to join Billy and the corporation as defendants. Billy
was sued in his capacity as a director, shareholder, or officer of the corporation.

 On April 30, 1991, trial proceeded before the court. At trial, counsel for Billy
agreed to represent Howard as well.

 The decisive findings of fact were as follows:



3. That H.B. CLAGETT individually and on behalf of FAIRWAY
ESTATES, INC. represented to Plaintiff that the Lot was suitable for
residential purposes and had access to water and waste-water utilities for
use by Plaintiff and subsequent purchasers;


4. Water and waste-water utilities were and are not available to the Lot. . . .



 Upon these findings of fact, the court made the following conclusions of law:



1. The conduct of H.B. Clagett violated the deceptive trade practices
act; . . .



5. That the damages sustained by Plaintiff is the difference between the value
of the Lot as represented by H.B. Clagett with water and waste-water
utilities, and the value of the Lot without water and waste-water utilities.



 The trial court rendered judgment against Howard, Billy, and the corporation
jointly and severally. The court rendered a monetary judgment against appellants for actual
damages in the amount of $6830 and attorney fees in the amount of $5652, and allowed
Wendlandt to retain the property. Howard and Billy appeal from this judgment and bring ten
points of error. First, we will address Howard's points of error (points one, five, six, seven,
and nine). Second, we will address the points of error raised by Billy (points two, three, four,
eight, and ten).



DISCUSSION AND HOLDING



A. Howard Clagett's Points of Error


1. Limitations

 In point of error one, Howard contends the trial court erred in overruling his
statute-of-limitations defense that the action was not commenced within two years of the false,
misleading, or deceptive act and that there was no evidence or insufficient evidence to entitle
Wendlandt to the discovery rule.

 Howard claims that the lot was purchased on March 16, 1987, and suit was filed
on September 19, 1989; therefore, the two-year statute of limitations applicable to DTPA actions
had expired. Tex. Bus. & Com. Code Ann. § 17.565 (West 1987). We disagree.

 The clear language of section 17.565 provides that, for all DTPA actions, the
statute of limitations period begins to run from: (1) the date on which the false, misleading, or
deceptive act took place; (2) the date the consumer discovered the act; or (3) the date the
consumer should have discovered the act. Id. If the act itself is not a "legal injury," however,
the cause of action accrues, and limitations begin to run, when the damages are sustained. Atkins
v. Crosland, 417 S.W.2d 150, 153 (Tex. 1967); Darr Equip. Co. v. Allen, 824 S.W.2d 710, 712
(Tex. App.--Amarillo 1992, writ denied). A "legal injury" occurs when the defendant's conduct
first becomes "unlawful" as to the plaintiff under the law applicable to the circumstances of the
case. Zidell v. Bird, 692 S.W.2d 550, 554 (Tex. App.--Austin 1985, no writ).

 In the case at bar, Howard's representation to Wendlandt was the conduct that
formed the basis of this lawsuit. In March 1987, this representation was not unlawful as to
Wendlandt because the representation could have been fulfilled, i.e., there had been no legal
injury. The 1987 representation did not become a misrepresentation until 1988 when Howard told
Case that water utilities were not available to the lot. Once the misrepresentation was realized in
1988, a "legal injury" had occurred to Wendlandt, and at that time, the limitations period began. 
Accordingly, the suit was timely when filed on September 19, 1989.

 Appellants contend that this case involves a "post-transaction representation" which
generally cannot be subject to a DTPA action. See Texas Cookie Co. v. Hendricks & Peralta,
Inc., 747 S.W.2d 873, 880 (Tex. App.--Corpus Christi 1988, writ dism'd). However, a post-transaction representation may be subject to a DTPA action if it is the "producing cause" of
damages. HOW Ins. Co. v. Patriot Fin. Servs., 786 S.W.2d 533, 541 (Tex. App.--Austin 1990,
writ denied). Had Howard never told Case that water utilities were not available and lived up to
his original representation, Wendlandt would not have suffered damages. (1) Therefore, this post
transaction representation was the producing cause of Wendlandt's damages.

 We overrule point of error one.

2. Sufficiency of Evidence

 In point of error five, Howard asserts the trial court erred in finding that appellants
committed an unfair or deceptive act or practice by misrepresenting the availability of water
utilities to the lot because there was no evidence or, alternatively, insufficient no evidence to
support such misrepresentations.

 In reviewing a "no evidence" challenge, an appellate court may consider only the
evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable
light, support the trier of fact's finding. We disregard all evidence and inferences to the contrary. 
Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986); Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965). Any probative evidence supporting the finding is sufficient to overrule the
point of error. McGuillard v. Kuhlman, 722 S.W.2d 694, 697 (Tex. 1986); see William Powers,
Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515, 522 (1991).

 Wendlandt, Case, and Terry Ewald testified to support the alleged
misrepresentations. On this issue, Howard testified on behalf of himself, Billy, and the
corporation. Wendlandt testified that when he bought the property, Howard represented that a
private water supply was available to the lot. He stated that Howard showed him the water system
and reassured him that, if necessary, Howard could also build another well to meet demand. He
further testified that he knew electric utilities were available to the lot but sewage and gas were
not.

 Before purchasing the lot Wendlandt was shown a land plat which stated he was
required to connect to the Ryan Hills water supply before he could occupy the land. His title
policy also stated this condition. However, after the meeting between Case and Howard, Howard
approached Wendlandt with a new land plat. Wendlandt testified that Howard had blocked out
the language on this plat which enabled the lot in question to be serviced by the private water
system. Howard's justification was that the private water system was originally intended for
Section One only. Wendlandt testified that he interpreted this to mean he was prevented from
using the private water system.

 Case testified that Wendlandt originally informed him there was a water supply to
the property but that the electricity, gas, and septic system were Case's responsibility. Further,
he testified that during one of his visits he discovered a small water line on the property that was
connected to a spigot.

 Case stated that Howard informed him that a private water well and storage tank
provided service to the lot in question and to all the adjoining and surrounding lots. Significantly,
Howard stated that if all the adjoining and surrounding lots became occupied, the demand on the
water system could become too great and Case could lose service to his lot.

 Ewald, director of health programs for the San Marcos--Hays County Health
Department, testified that he helped Case attempt to obtain a variance that would allow him to
drill a well on the lot in question. However, because the lot was too small and because the wells
of the adjoining landowners were too close to the subject property, the commissioner's court
denied the variance. Ewald further stated there was a water tap with a spigot on the lot, but he
speculated that the source of the water was from a well located on adjoining property.

 After reviewing the record, we have determined that there is legally sufficient
evidence to support the finding that water utilities were not available to the lot. Therefore,
Howard's "no evidence" point of error is overruled. However, Howard also asserts that there is
insufficient evidence to uphold the trial court's findings of fact. An appellate court should sustain
an "insufficient evidence" point of error only if, after reviewing the entire record, the finding is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Howard testified that water provided by the Ryan Hill water system was on the lot. 
Howard stated that he told Case that anyone occupying the lot would have to use the Ryan Hill
water system. Further, he testified that he never represented to Case that he could not have water. 
He maintained that a septic system could be installed on the lot without having to obtain a
variance. Finally, Howard testified that he did not tell Case that he might be cut off from the
water supply if numerous other lots were connected to the water source.

 The trial court found that Howard represented to Wendlandt that the lot was
suitable for residential purposes and had access to water and waste-water utilities for use by
Wendlandt and subsequent purchasers. Further, the court found that water and waste-water
utilities were and are not available to the lot. These findings permitted the trial court to render
judgment against appellants for misrepresentations in violation of the DTPA.

 After reviewing the evidence, we hold the testimony shows that some water might
have been available to the lot, but the finding that water utilities were and are not available to the
lot as represented by Howard, because the water supply in future years might prove undependable,
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Therefore, we hold that the evidence was factually sufficient. Accordingly, we overrule Howard's
fifth point of error.

3. Consumer Status under the DTPA

 In point of error six, Howard contends there was insufficient or, alternatively, no
evidence to establish that Wendlandt was a consumer under the DTPA. It is Howard's position
that the transaction on March 16, 1987 was merely a loan secured by the lot in question;
therefore, Wendlandt was a creditor or lender, not a DTPA consumer. We disagree.

 Whether an instrument written as a deed is actually a deed or a mortgage is a
question of fact, and the true nature of the instrument is resolved by ascertaining the intent of the
parties as disclosed by the contract or attending circumstances or both. Johnson v. Cherry, 726
S.W.2d 4, 6 (Tex. 1987). At trial, Wendlandt and Howard both testified that Howard Clagett
originally intended to obtain a loan. However, the deed and escrow agreement combined with the
testimony of Wendlandt and Howard establish that the transaction on March 16, 1987 was
intended as a sale with the right to repurchase. Because some evidence indicates that this
transaction was intended as a sale, and because the trial court's finding of fact that this transaction
was a sale is not so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust, we hold that the evidence is legally and factually sufficient.

 Consumer status is generally a question of law to be determined by the trial court
from the evidence. HOW Ins. Co. v. Patriot Fin. Servs., 786 S.W.2d 533, 539 (Tex. App.--Austin
1990, writ denied). A consumer is an "individual . . . who seeks or acquires by purchase or
lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (West 1987). 
Purchasers of lots in a subdivision may be consumers under the DTPA. Chastain v. Koonce, 700
S.W.2d 579, 581-82 (Tex. 1985); Manchac v. Pace, 608 S.W.2d 314, 315-16 (Tex. Civ.
App.--Beaumont 1980, writ ref'd n.r.e.). The fact that the eventual buyer does not initiate the
transaction will not deprive him of consumer status, so long as he acquires the goods or services
by purchase or lease. Tex. Bus. & Com. Code § 17.45(4) (West 1987). Upon the record before
us, Wendlandt clearly qualified as a consumer within the meaning of the DTPA. Point of error
six is overruled.

4. Jury Demand

 In point of error nine, Howard contends the trial court erred in refusing him a jury
trial. To properly request a jury, a party must pay a jury fee and make a jury demand. Tex. R.
Civ. P. 216. The deposit of the jury fee with the district clerk by itself does not constitute a
demand for a jury. City of Houston v. Arney, 680 S.W.2d 867 (Tex. App.--Houston [1st Dist.]
1984, no writ); Walker v. Walker, 619 S.W.2d 196, 198 (Tex. App.--Tyler 1981, writ ref'd
n.r.e.); see also Forscan Corp. v. Dresser Indus., 789 S.W.2d 389, 392 (Tex. App.--Houston
[14th Dist.] 1990, writ denied) (holding that cover letter accompanying jury fee did not constitute
"application" for jury trial within meaning of Tex. R. Civ. P. 216). Howard paid his jury fee but
did not make a demand to the court for a jury trial and, therefore did not secure his right to a jury
trial.

 Alternatively, Howard argues that at the time he tendered the jury fee he was
representing himself pro se and, therefore, should be excused from the formal requirements of
Tex. R. Civ. P. 216. We disagree. This Court is bound to apply the rules of procedure without
consideration of the adequacy of a party's representation. Stein v. Lewisville Indep. Sch. Dist.,
481 S.W.2d 436, 439 (Tex. Civ. App.--Fort Worth 1972, writ ref'd n.r.e.), appeal dismissed and
cert. denied, 414 U.S. 948 (1973). This rule applies with equal force to pro se litigants. Id.

 Because Howard did not properly request a jury, we hold the trial court did not
abuse its discretion in holding trial before the court. We overrule point of error nine.


5. Damage Award

 In point of error seven, Howard challenges the damages awarded to Wendlandt by
the trial court. The DTPA provides for recovery of actual damages, which means those damages
recoverable at common law. Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 939
(Tex. 1980). The actual damages recoverable under section 17.50(b)(1) of the DTPA are to be
determined by the total loss sustained by a consumer as a result of the deceptive trade practice. 
Kish v. Van Note, 692 S.W.2d 463 (Tex. 1985). For misrepresentation, this includes (1) the
difference between the value of that which was parted with and that which was received, or (2)
the difference between the value as represented and the value actually received. W. O. Bankston
Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). However, these are not the exclusive
methods of calculating damages. See Gibbs v. Main Bank, 666 S.W.2d 554, 560 (Tex.
App.--Houston [1st Dist.] 1984, writ ref'd n.r.e); Woo v. Great Sw. Acceptance Corp., 565
S.W.2d 290 (Tex. Civ. App.--Waco 1978, writ ref'd n.r.e.).

 The DTPA allows affected consumers to recover the greatest amount of actual
damages alleged and factually established to have been caused by the deceptive practice. Vick v.
George, 671 S.W.2d 541, (Tex. App.--San Antonio 1983), rev'd in part on other grounds, 686
S.W.2d 99 (Tex. 1984). In this case, we conclude the proper measure of damages is the
difference in value between the property as represented and the value actually received. However,
because this case involves a post-transaction representation, the measure of value of the property
as represented should be measured from the time the legal injury occurred. Howard represented
that water utilities would be available to the lot. In September 1988, he reneged on his promise. 
This event was the producing cause of Wendlandt's damages. At that time, the trial court found
that the property as represented would have been worth $6830; however, without water utilities,
it was worthless.

 Howard argues that "all real estate is presumed to have a positive value," without
citing any authority. Neither Howard nor Billy proffered any evidence at trial that would support
their claim as to the lot's value without water utilities. Wendlandt met his burden of proof at trial,
and in the absence of any controverting testimony, we will not question the trial court's rulings
as to valuation of the property. We overrule point of error seven.

B. Billy Clagett's Points of Error

 We now turn to Billy Clagett, sued in his official capacity as a director,
shareholder, or officer of the corporation.

1. Limitations

 In point of error two, Billy contends the trial court erred in overruling his statute-of-limitations defense because the action was not commenced within two years and there was no
evidence or insufficient evidence to entitle Wendlandt to rely upon the discovery rule.

 We have held that the statute of limitations period for Wendlandt's cause of action
began to run in the summer of 1988. Suit was not filed against Billy and the corporation until
October 23, 1990. Therefore, unless the amended filing relates back to the original filing, a
different statute of limitations period applies, or the limitations period was tolled for some reason,
Billy was not properly a party to this suit.

 The general rule is the date of the original filing does not toll the statute as to a new
and different party. First State Bank & Trust Co. v. Ramirez, 126 S.W.2d 16, 18 (Tex. 1939); 
see, e.g., Stokes v. Beaumont, Sour Lake & W. Ry., 339 S.W.2d 877 (Tex. 1960) (instituting suit
against one corporation will not interrupt running of limitations period as to different corporation
or entity); Davis v. Outdoor Equip. Co., 551 S.W.2d 72, 73 (Tex. Civ. App.--Houston [1st Dist.]
1977, no writ) (bringing suit against corporation only did not bar statute of limitations as to
partnership). However, the presence of a special relationship provides an exception to the general
rule and allows the date of the amended petition to relate back to the date of the original petition. 
See, e.g., Continental S. Lines, Inc. v. Hilland, 528 S.W.2d 828 (Tex. 1975) (suing corporation
under assumed name did not preclude plaintiff from opportunity to prove corporation was not
misled as to mistake); Gentry v. Credit Plan Corp., 528 S.W.2d 571 (Tex. 1975) (suing
subsidiary will toll limitation against parent if alter ego is proven); O'Quinn v. Scott, 251 S.W.2d
168 (Tex. Civ. App.--Waco 1952, writ ref'd) (filing of amended petition that changed capacity of
defendants from partners of partnership to officers of corporation relates back to original petition);
Nelson v. Schanzer, 788 S.W.2d 81 (Tex. App.--Houston [14th Dist.] 1990, writ denied) (filing
of action against company tolled running of limitations against company's owner, who was alter
ego of company); cf. Wright v. Gifford-Hill & Co., Inc., 736 S.W.2d 828 (Tex. App.--Waco
1987, writ ref'd n.r.e.).

 In this case, the record reflects a special relationship existed between Howard and
the corporation that tolled the statute of limitations as to the corporation when suit was filed
against Howard as the successor in interest to the corporation. Because the statute was timely
when filed as to the corporation, we believe the statute was also properly tolled as to any officers,
directors or shareholders of the corporation. It follows that Billy was properly included in this
lawsuit. We overrule point of error two.

2. Notice and Presentment Requirements

 In points of error four and eight, Billy contends the trial court erred in rendering
judgment against him because Wendlandt neither pleaded nor proved that the notice required by
the DTPA was given to him or the corporation, and that presentment for attorney's fees was never
made upon him. In response, Wendlandt claims that DTPA notice was not necessary because
Billy Clagett was not sued under the DTPA.

 Billy's liability arises out of his status as an officer of the corporation. Therefore,
it is not necessary that he receive notice so long as the corporation is deemed to have received
notice. Likewise, it is not necessary that he be presented with the claim for attorney's fees so
long as presentment is deemed to have been made upon the corporation. Because the
corporation's successor in interest, Howard, was provided with notice and presentment of the
claim for attorney's fees, notice and presentment need not have been made upon Billy, sued in his
capacity as a former director, officer, or shareholder of the corporation. We overrule points of
error four and eight.


3. Joint and Several Liability

 In point of error three, Billy contends the trial court erred in rendering judgment
against him jointly and severally. He asserts that he was not individually involved with the
transactions that form the crux of the misrepresentations and his liability exists strictly as a
corporate officer, shareholder, or director of the dissolved corporation.

 Wendlandt agrees that Billy's liability exists only from obligations imposed on
corporate officers by the trust fund doctrine. Act of Apr. 30, 1987, 70th Leg., R.S., ch. 93, §
31, art. § 7.12, 1987 Tex. Gen. Laws 203, 223 (Tex. Bus. Corp. Act Ann. § 7.12 (since
amended)). In this regard, Wendlandt contends that because Billy received corporate assets upon
dissolution he should be held jointly and severally liable.

 Wendlandt relies solely upon Thompson v. A.G. Nash & Co., 704 S.W.2d 822
(Tex. App.--Tyler 1985, no writ). In Thompson, judgment was rendered jointly and severally
against a shareholder because the evidence established as a matter of law that each shareholder
received funds upon dissolution of the corporation in an amount in excess of the judgment
rendered. Id. at 824. Here, judgment was rendered jointly and severally against Billy in his
capacity as a director, shareholder, or officer of the corporation without establishing that he had
received funds from the dissolved corporation in excess of the judgment.

 Existence of the so-called "trust" relationship in situations controlled by the trust
fund doctrine provides no basis for personal liability of directors. Henry I. Siegel Co. v.
Holliday, 663 S.W.2d 824, 827 (Tex. 1984). The doctrine only allows corporate creditors to
follow corporate assets and to subject those assets to payment of their claim. Id. at 827. This
liability is limited to the extent of corporate assets that come into the directors hands. If the assets
can no longer be traced, the directors of the dissolved corporation become personally 

liable for their value. Id. at 828. The trial court erred in holding Billy jointly and severally liable
without tracing the assets he received from the dissolved corporation. We sustain point of error
three.


4. Billy Clagett's Crossclaim

 In point of error ten, Billy urges this Court to hold, as a matter of law, that
Wendlandt's suit was groundless and brought in bad faith, or brought for the purpose of
harassment, and requests that we award Billy Clagett its attorney's fees under section 17.50(c) of
the DTPA. See Tex. Bus. & Com. Code Ann. § 17.50(c) (West 1987). After reviewing the
entire record, we decline to so hold. See Donwerth v. Preston II Chrysler-Dodge, 775 S.W.2d
634, 636-38 (Tex. 1989). Point of error ten is overruled.

 The judgment of the trial court is reversed and the cause is remanded for the limited
purpose of determining the extent of Billy Clagett's monetary liability, if any. On remand, the
trial court shall conduct an evidentiary hearing for the purpose of determining the extent of
corporate assets received by Billy Clagett and render judgment consistent with its finding and this
opinion.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Reversed and Remanded with Instructions

Filed: October 14, 1992

[Do Not Publish]
1. Howard and Billy contend that a private well could have been drilled on the property. 
They claim the San Marcos--Hays County Commissioner's Court was wrong to deny the
variance because this property is exempt from regulations restricting the size of lot upon which
a private well may be drilled. But this does not help the appellants. Assuming, arguendo,
Case could have drilled his own well, Howard would still be liable for his misrepresentation. 
The original representation was that water utilities were available, meaning that whatever
service was supplied to Section One had to be supplied to Lot One, Section Two on the same
terms and for the same period of time. The fact that a landowner may drill a private water
well on his own land does not mean that he has water utilities.